**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 15 |
| ABENGOA, S.A., *et al*.,[1] | ) |
| | ) Case No. 16-_____ (  ) |
| Debtors in a Foreign Proceeding. | ) |
| | ) (Joint Administration Requested) |
| | ) |

**DECLARATION OF BORJA FERNÁNDEZ DE TROCÓNIZ IN SUPPORT
OF THE VERIFIED PETITION UNDER CHAPTER 15 FOR ORDER AND
FINAL DECREE GRANTING RECOGNITION OF FOREIGN MAIN
PROCEEDINGS AND PERMANENT INJUNCTIVE AND OTHER RELIEF**

I, Borja Fernández de Trocóniz, declare under penalty of perjury as follows to the

best of my knowledge, information, and belief:

1.       I am an *abogado* duly admitted to practice in Spain and a partner in

the law firm of Linklaters LLP, located at Almagro, 40, Madrid, E-28010, Spain.  I submit this

declaration (the "**Declaration**") in support of the Verified Petition under Chapter 15 for Order

and Final Decree Granting Recognition of Foreign Main Proceedings and Permanent Injunctive

and Other Related Relief (together with the official form petition filed contemporaneously

therewith, the "**Petition**") filed in the above-captioned chapter 15 cases.  The Petition seeks,

---

[1] The last four digits of the Employer Identification Number or Spanish Tax Number, as appropriate, for each debtor follow in parentheses: Abengoa, S.A. (7844); Abeinsa Asset Management, S.L. (formerly Abener Inversiones, S.L.) (4597); Abeinsa Inversiones Latam, S.L. (formerly Dimange Inversiones 2009, S.L.) (9680); Abeinsa, Ingeniería Y Construcción Industrial, S.A. (1355); Abencor Suministros S.A. (9461); Negocios Industriales Y Comerciales, S.A. (5977); Abener Energía, S.A. (1759); Abengoa Bioenergía, S.A. (3249); Abeinsa Infraestructuras Medio Ambiente, S.A. (formerly Befesa Agua) (0792); Abengoa Finance, S.A. (0266); Abengoa Concessions, S.L. (8044); Abengoa Solar España, S.A. (formerly Solúcar Energía, S.A.) (5314); Abengoa Solar New Technologies S.A. (formerly Solúcar, Investigación y Desarrollo (Solúcar, R&D), S.A.) (2116); Abentel Telecomunicaciones, S.A. (0178); Asa Desulfuración, S.A. (formerly Befesa Desulfuración, S.A.) (0823); Bioetanol Galicia, S.A. (2146); Ecoagrícola, S.A. (1986); Instalaciones Inabensa, S.A. (2466); Europea de Construcciones Metálicas, S.A. (1303); Siema Technologies, S.L. (formerly Telvent Corporation) (3340); Abengoa Water, S.L. (formerly Befesa Water Projects S.L.) (6958); Abengoa Solar S.A. (formerly Solúcar Solar) (9982); Abengoa Greenfield S.A.U. (3677); Abengoa Greenbridge, S.A.U. (8452).

among other relief, chapter 15 recognition of the judicial confirmation request (*solicitud de homologación judicial*) (the "**Judicial Confirmation Request**") of that certain Standstill Agreement by and among Abengoa, S.A., as the Parent, certain of its subsidiaries, as Debtors and a group of entities, as Creditors, dated 18 March 2016 (the "**Standstill Agreement**") under Additional Provision Four of the Spanish Insolvency Act (*Ley 22/2003, de 9 de julio, Concursal*) (the "**Act**") to the extent the Standstill Agreement is sanctioned by the Mercantile Court of Seville, Spain (the "**Spanish Court**").[2]  As of the date hereof, the Judicial Confirmation Request is pending (the "**Spanish Proceeding**") before the Spanish Court.

2.     As set forth in more detail in the Petition, by commencing the Spanish Proceeding, the Parent and each Debtor incorporated in Spain (the "**Homologation Parties**") seek, among other things, to enforce the Standstill Agreement, which was agreed to by more than 60% of the Debtors' financial creditors as certified by the Debtors' Auditor on the basis of information provided to the Auditor by the Debtors, against the Debtors' non-participating or dissenting financial creditors in the territorial jurisdiction of the United States (the "**U.S.**").  By its terms, the Standstill Agreement, among other things, stays the Parties from exercising rights and remedies under the Affected Debt through and including October 28, 2016.  The purpose of the Standstill Period is to allow the Parties to negotiate, agree and implement a consensual Restructuring in respect of the Group.

3.     In this Declaration, after describing my background and qualifications, I provide a description of Spanish law and practice relevant to this Court's consideration of the Petition.  I also wish to advise this Court of the procedures relating to the Judicial Confirmation Request underway with respect to the Homologation Parties.

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed in the Standstill Agreement.

4.      In preparing this Declaration, I have reviewed (i) the Petition, (ii) the Standstill Agreement and (iii) relevant provisions of the Act and other relevant provisions of Spanish law as I consider may relate to chapter 15 and other aspects of U.S. bankruptcy law.

### PROFESSIONAL BACKGROUND AND QUALIFICATIONS

5.      Relevant aspects of my legal background are as follows: I earned my undergraduate degree in law in 1996 and in business administration in 1997 from ICADE in Madrid, Spain.  I qualified as a State Attorney (*Abogado del Estado*) in 2000.  From 2000 – 2005, I worked for the Government of Spain as a Government Lawyer in a number of roles, including representing the Government of Spain on contentious matters before the Administrative Chamber of the High Court of Justice in Madrid and Civil Courts of Madrid. From 2005 – 2007, I held the position of Head of Legal of Barclays Bank, S.A.  From 2007 – 2012 I was a Counsel at the law firm of Allen & Overy LLP.  From 2012 – 2015, I was a Partner at Allen & Overy LLP.  In November of 2015, I joined Linklaters LLP as a Partner in the Dispute Resolution group based in Madrid. I have 12 years experience as a university professor at the Universidad Complutense of Madrid. I am a member of the Spanish Arbitration Club (CEA) and am included in the list of arbitrators of the Spanish Court of Arbitration. I have broad experience advising corporates and financial institutions on a wide range of litigation matters, both before ordinary and arbitration courts, including bank litigation, commercial disputes and insolvencies. I regularly advise parties in connection with complex, cross-border insolvencies involving Spanish companies. My experience includes advising significant stakeholders in the pre-insolvency or insolvency proceedings of Martinsa Fadesa, the largest insolvency in Spain, Habitat Inmobiliaria, Colonial, Metrovacesa, Nozar, Edscha Automotive, Itevelesa, Pescanova, Marme, Alteco/Mag Import and La Seda de Barcelona.

6.      I, together with other partners and associates in my firm, have been advising the Debtors on various legal aspects of the Debtor's restructuring, including the conduct of the Judicial Confirmation Request (with respect to which the law firm of Cortés, Abogados has been leading), since November 2015.[3]

### STATEMENTS ON SPANISH LAW AND PRACTICE

7.      Additional Provision Four of the Act is one of a number of recent amendments to the Act intended to support the ability of Spanish companies in financial distress to restructure their debts.   Additional Provision Four establishes the circumstances in which a qualifying refinancing agreement may be judicially homologated.   To be eligible for judicial homologation, a refinancing agreement must involve a significant extension of available credit or the extinguishment or amendment of a debtor's existing debt obligations, either by extending the term within which debt must be repaid or by creating new debt obligations in exchange for existing debt obligations, in as much as those measures respond to a viability plan that ensures that the debtor will be a going concern in the short and medium term.   As a matter of Spanish law, the homologation of a refinancing agreement may only affect holders of financial debt without their consent.[4]   Debts owed to employees, trade creditors and to public sector creditors may not be compromised involuntarily in a refinancing agreement under Spanish law, although employees, trade creditors and certain other holders of non-financial debt may elect to enter into a refinancing agreement voluntarily.

8.      Under Additional Provision Four of the Act, a refinancing agreement may have varying effects on non-participating or dissenting financial creditors depending on the level of

---

[3] The information concerning the Spanish Proceedings provided herein is drawn either from public documents or from my personal knowledge.  Furthermore, I have not relied on any confidential attorney-client communications or on confidential documents prepared in anticipation of litigation.

[4] Because the Affected Debt represents unsecured debt obligations, I describe only those aspects of the Act and Additional Provision Four relevant to unsecured creditors.

support attained from consenting creditors. A refinancing agreement supported by 51 per cent by value of all the financial creditors may be sanctioned by the relevant Spanish court, with the effect that the obligations set forth in the refinancing agreement will be insulated from certain termination or claw back risk in case of insolvency.   The terms of a refinancing agreement supported by 51 per cent by value of all financial creditors may not, however, be imposed upon non-participating or dissenting affected creditors.

9.      If a refinancing agreement is supported by 51 per cent by value of all the financial creditors and by creditors representing at least 60 per cent by value of affected financial creditors (unsecured), in addition to insulating the refinancing agreement from certain termination and clawback risk, the judicial homologation of the refinancing agreement means that non-participating and dissenting financial creditors will also be bound.  The terms of a refinancing agreement that may be imposed on non-participating and dissenting creditors include a moratorium on the payment of principal, interest or other liabilities not to exceed five years and the conversion of debt claims into participating loans for no more than five years.

10.      If a refinancing agreement is supported by 51 per cent by value of all the financial creditors and by creditors representing at least 75 per cent of the value of affected financial creditors (unsecured), and it is judicially homologated, the following terms of a refinancing agreement may be imposed on non-participating and dissenting creditors: (i) a moratorium on payment of principal, interest or any amount from five to ten years; (ii) a write down of debt claims; (iii) conversion of debt claims into equity in the debtor; (iv) conversion of debt into participating loans of more than five years up to a maximum of ten years, convertible bonds, subordinated loans, loans with PIK interest or other financial instruments of different ranking,

maturity or feature than the original debt; or (v) assignment of assets or rights in payment in satisfaction of all or part of the original debt.

11. For the purpose of calculating the relevant percentage of creditor support, financial liabilities held by creditors who are related persons as defined under paragraph 2 of Article 93 of the Act are not taken into account. Moreover, to the extent creditors under a syndicated loan facility, for example, enter into a refinancing agreement, all members of the syndicate will be deemed to have agreed to the refinancing agreement for homologation purposes if lenders representing 75 per cent of the amount of the syndicated debt (or less, if the relevant loan agreement allows decisions to be passed by consent from a smaller majority of lenders) agree.

12. A request for judicial homologation can be initiated by the debtor or by any creditor who has signed a refinancing agreement by petitioning the relevant Spanish court. The petition must be accompanied by the following: (i) a feasibility or viability plan demonstrating the manner in which the refinancing agreement permits the debtor to continue its trading activity in the short to medium term; (ii) a debtor auditor's certification that the refinancing agreement has been accepted by the relevant majority of creditors applicable under the Act; and (iii) the refinancing agreement duly executed as a public deed before a Spanish notary. The Act permits the debtor to remain in possession and continue to trade, subject to the terms of the refinancing agreement, during the pendency of the Spanish court homologation process.

13. Additional Provision Four of the Act does not contemplate or require the appointment by the relevant Spanish court of a receiver (*Administrador Concursal*) or other representative to oversee or manage the debtor subject to the homologation proceeding. By the same token, Additional Provision Four of the Act does not preclude a debtor subject to a

homolgation proceeding from appointing (or from the debtor and its creditors to agree upon) a person to act as the debtors' representative in relation to the homologation proceeding for the purpose of seeking recognition of such homologation proceeding outside of Spain.

14.     The relevant Spanish court, upon examining the homologation request, shall enter an order accepting jurisdiction over the homologation and shall, at such time, declare that a moratorium of enforcement actions in Spain has commenced until the homologation is resolved. The criterion for accepting jurisdiction is whether the Spanish Court would be competent to deal with the insolvency proceeding of the debtor subject to homologation.  The clerk of the relevant Spanish court will then publish the ruling accepting jurisdiction in the public insolvency register (*Registro Público Concursal*), identifying the debtor, the competent court, case number, the date of the refinancing agreement and the effect of its terms.   The relevant Spanish court will endeavour to consider and determine whether to approve the homologation of the refinancing agreement on an expedited basis within fifteen days of the publication of the announcement that the homologation had been admitted for consideration.

15.     Provided the applicable standards are met, the relevant Spanish court's ruling approving the homologation shall be published on the public insolvency register and in the Spanish State Official Gazette (*BOE*).   Within fifteen days following this publication, creditors holding financial liabilities affected by the judicial homologation who have not signed the refinancing agreement or who have shown their dissent, may challenge it.  Creditors' grounds for challenging a homologation petition are limited.   Creditors may object that the homologation petition failed to meet the valuation thresholds for acceptances required under Additional Provision Four of the Act.  In addition, creditors may object on the grounds that the refinancing

agreement imposes disproportionate sacrifice on affected financial creditors by, for example, imposing unequal treatment.

16.     Any challenges to the homologation are to be considered and processed promptly by the relevant Spanish court.

17.     The Act suggests that objections should be resolved by within the 30 days of an objection being filed, though, in practice, resolution of objections may take longer. If no objections are filed, or all objections are rejected, the relevant court will issue a resolution (*Sentencia*) homologating the refinancing agreement.   The resolution either homologating or declining to homologate the refinancing agreement after the expiry of the challenge period is final and unappealable.

18.     Attached hereto as Exhibit A is a true and correct copy of the official English translation of the Act.

**JUDICIAL CONFIRMATION REQUEST OF THE
STANDSTILL AGREEMENT**

19.     The Parent, on behalf of itself and as representative for each of the Debtors, has been in negotiations with Creditors of the Affected Debt Instruments with the objective of reaching an agreement on the Restructuring of the Affected Debt.   The Affected Debt is comprised of dozens of syndicated loan facilities, notes, convertible notes, ECP programs, derivative transactions, bonding lines, intra group debt, guarantees and other unsecured debt referred to in Recital (E) of the Standstill Agreement.   The Affected Debt includes Affected Debt Instruments governed under English, Spanish and New York law.   In order to provide the necessary time to reach a full and comprehensive agreement on the terms and conditions of the Restructuring, certain Creditors agreed to stay certain rights and actions against the Companies for a period of seven months.

20.    On March 18, 2016, the Parent and 71 of its subsidiaries entered into the Standstill Agreement.  Schedule E of the Standstill Agreement contains a detailed description of the Affected Debt Instruments making up the Affected Debt, indicating the respective Creditor and the borrowing and guarantor company of the Group corresponding to each agreement, among other information.  Schedule 3.1 of the Standstill Agreement includes the Standstill Business Plan, showing the viability of the Group in the short and medium term and the ability of the Companies to regularly meet their current obligations during the period considered therein. Attached hereto as Exhibit B is a true and correct copy of the Standstill Agreement.

21.    The Companies retained Lucid Issuer Services Limited (the "**Information Agent**") to assist in soliciting consents to accede to the Standstill Agreement from the holders of outstanding principal amounts of the affected bond issues, in accordance with applicable law. On or about March 18, 2016, the Information Agent released the Standstill Agreement and forms of Creditor accession letters to certain holders of Affected Debt Instruments via the clearing systems of Euroclear S.A./N.V. ("**Euroclear**"), Clearstream Banking, *société anonyme* ("**Clearstream**") and Depository Trust Company ("**DTC**").  In addition, the Companies made available a Spanish notary public from March 18, 2016 until March 27, 2016, between 9:30am and 7 p.m. every business day and until 2 p.m. during bank holidays in Madrid to facilitate execution of the Standstill Agreement by financial creditors.  Financial creditors may also accede to the Standstill Agreement by appearing before any notary public and signing an accession letter.

22.    On March 28, 2016, the Homologation Parties commenced the Judicial Confirmation Request with the Spanish Court in respect of the Standstill Agreement under Additional Provision Four of the Act, which is a proceeding that arises under a law relating to

insolvency or adjustment of debt.[5]  The Homologation Parties submitted the Standstill Viability Plan, a fully executed and notarized version of the Standstill Agreement executed as a public deed and certification from the Companies' Auditors confirming the exact level of Creditor support for the Standstill Agreement by reference to the liabilities in respect of each Debtor incorporated in Spain arising from the Affected Debt.  The Judicial Confirmation Requests are collective proceedings because the Affected Debt includes financial creditors who hold numerous different debt instruments representing a substantial amount of the Companies' outstanding obligations.

23.    On March 28, 2016, the clerk of the Spanish Court published in the public insolvency register a resolution (*Providencia*) of the Spanish Court accepting jurisdiction over the Judicial Confirmation Request and declaring the imposition of a moratorium of enforcement actions against the Homologation Parties during the pendency of the Spanish Proceeding.  I note that the Spanish Court previously accepted jurisdiction over each of the Homologation Parties petitioning for chapter 15 relief in connection with their proceedings under Article 5 bis of the Act.  The Spanish Court's prior acceptance of jurisdiction over the Article 5 bis proceedings of the Homologation Parties organized in Spain means, as a legal matter, that the Spanish Court validated the presumption that the center of main interests of all Homologation Parties is in Spain.  As of the result of the Spanish Court's acceptance of jurisdiction, the Spanish Court has control or supervision over the assets and affairs of the Homologation Parties in connection with the Standstill Agreement; for example, it has ordered the stay of enforcement actions against the

---

[5] The Homologation Parties include 47 5bis Companies listed in Schedule C of the Standstill Agreement with respect to which the Spanish Court has issued orders accepting jurisdiction and granting them the protection of the notice rendered under article 5bis of the Act. The 5 bis notice waives the obligation of filing for insolvency for up to four (4) months to allow the debtor to restructure its debts through a negotiation with its creditors.

Homologation Parties. Homologation of the Standstill Agreement is critical to the Companies' ongoing efforts to agree a Restructuring.

24.    It is my belief that the relief requested in the Petition and related motions is necessary to give effect to the Judicial Confirmation Request in the U.S., to protect the U.S. assets of the petitioning Group members and to prevent creditors from taking actions in the U.S. under U.S. law in a way that could frustrate the Group's efforts to agree a Restructuring. Without obtaining the relief requested in the Petition and related motions, the Homologation Parties would not be able to immediately enforce the Standstill Agreement against Creditors seeking to violate it in the U.S. Moreover, the relief requested in the Petition and related motions will best assure an economical, expeditious and fair administration of the Group's continued business for the benefit of all creditors while Restructuring negotiations are ongoing.

[*Remainder of page intentionally left blank.*]

## CONCLUSION

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed on this 28 day of March, 2016

In Madrid, Spain

_____

Borja Fernández de Trocóniz

Partner, Linklaters LLP

# EXHIBIT A

**Official English Translation of
the Spanish Insolvency Act (*Ley 22/2003, de 9 de julio, Concursa*l)**



Ministerio de Justicia

**ACT 22/2003, DATED 9TH JULY, ON INSOLVENCY**

**ACT 9/2015 AMENDMENT OF INSOLVENCY ACT**

2015

# Colección: Traducciones del Derecho Español

**Edita**
Ministerio de Justicia
Secretaría General Técnica

**NIPO**
051-15-015-9
051-15-024-5

**Traducción**
Clinter Traductores e Interpretaciones S.A.

**Maquetación**
Subdirección General de Documentación y Publicaciones

"El presente texto es una traducción de un original en castellano que no tiene carácter oficial en el sentido previsto por el apartado 1º) artículo 6 del Real Decreto 2555/1977, de 27 de agosto, por el que se aprueba el Reglamento de la Oficina de Interpretación de Lenguas del Ministerio de Asuntos Exteriores y de Cooperación."

# ACT 22/2003, DATED 9TH JULY, ON INSOLVENCY

References made to "insolvency administrators" shall be understood to refer to "insolvency practitioners" as established by Final Provision 1 of Act 38/2011, of 10th October.

## TITLE I

### ON THE DECLARATION OF INSOLVENCY PROCEEDINGS

## CHAPTER I
ON THE PREMISES OF INSOLVENCY PROCEEDINGS

**Article 1.** *Subjective premise.*

**1.** A declaration opening the insolvency proceedings shall be appropriate with regard to any debtor, whether a natural or legal person.

**2.** Insolvency proceedings may be opened with respect to an inheritance provided it has not been accepted unconditionally.

**3.** Insolvency proceedings may not be opened with respect to entities that form the territorial organisation of the State, public bodies and other Public Law entities.

**Article 2.** *Objective premise.*

**1.** A declaration opening the insolvency proceedings shall be appropriate in the event of insolvency of a common debtor.

**2.** A debtor who cannot duly fulfil the obligations he may be required to is in a state of insolvency.

Catálogo de Publicaciones

**3.** If the petition for a declaration opening the insolvency proceedings is submitted by a debtor, he must justify his indebtedness and state of insolvency, which may be current or imminent. A debtor who foresees he may not duly and punctually fulfil his obligations is in a state of imminent insolvency.

**4.** If the petition for a declaration opening the insolvency proceedings is submitted by a creditor, it must be based on a title by virtue whereof enforcement or collection proceedings have been dispatched without the seizure discovering sufficient free assets for the payment thereof, or when any of the following situations concurs:

1. General suspension of the current payment of the debtor's obligations;

2. The existence of seizures for foreclosures pending with an overall effect on the debtor's aggregate assets;

3. Unlawful removal or hasty or ruinous liquidation of his assets by the debtor;

4. Generalised breach of obligations of any of the following classes: those of payment of the requisite tax obligations during the three months prior to applying for insolvency; those of payment of Social Security contributions, and other joint collection items during the same period; those of payment of salaries and compensations and other remunerations arising from the relevant employment relations of the last three monthly payments.

**Article 3.** *Legitimacy.*[1]

**1.** The debtor, any of his creditors and the insolvency mediator are entitled to petition for insolvency proceedings to be opened when that is the procedure regulated in Title X of this Act.

 **2.** The provisions of the preceding Paragraph notwithstanding, creditors who have acquired claims by inter vivos acts and by a singular title, after maturity thereof, within the six months prior to lodging the petition, shall not be legitimated.

**3.** Shareholders, partners, members, or parties who are personally liable for the debtor's debts under the laws in force shall also be entitled to

---

[1]    Amendment of Paragraph 1 by Article 21.1 of Act 14/2013, dated 27th September.

petition for a declaration opening the insolvency proceedings of a legal person.

**4.** Creditors of a deceased debtor, his heirs, and the executor of the aggregate assets may petition for a declaration opening the insolvency proceedings of an inheritance not accepted unconditionally. The petition made by an heir shall take the effects of acceptance of the inheritance with the benefit of the inventory.

**5.** Repeal.[2]

**Article 4.** *On intervention by the Public Prosecutor.*

When, in actions over offences against property and against the social and economic order, indicative evidence points to a state of insolvency of any presumed party who is criminally liable and of the existence of a plurality of creditors, the Public Prosecutor shall call on the Court hearing the case to serve notice of the facts on the Mercantile Court with territorial competence to hear and determine the insolvency of the debtor, to the relevant ends, in case insolvency proceedings are under way with regard to thereto.

The Public Prosecutor shall also call on the Court hearing the case to serve notice on those facts to the creditors whose identity is ascertained in the ongoing criminal investigations, in order that, if appropriate, they may petition for a declaration opening the insolvency proceedings or exercise the actions to which they are entitled.

**Article 5.** *Duty to petition for a declaration opening the insolvency proceedings.*[3]

**1.** A debtor shall petition for a declaration opening the insolvency proceedings within the two months following the date of having known, or should have known, his state of insolvency.

**2.** In the absence of evidence to the contrary, it shall be presumed that the debtor knew of his state of insolvency when any of the facts that may act as the basis for a petition for compulsory insolvency pursuant to Paragraph 4 of Article 2 has arisen and, in the case of any of those foreseen in Paragraph 4, when the relevant term has elapsed.

---

[2]   Repeal of Paragraph 5 by the Sole Repealing Provision of Act 38/2011, dated 10th October.

[3]   Repeal of Paragraph 3 by the Sole Repealing Provision of Act 38/2011, dated 10th October. Addition of Paragraph 3 by Article 10.1 of Royal Decree-Law 3/2009, dated 27th March.

*Catálogo de Publicaciones*

**Article 5 bis.** *Notification of negotiations and effects thereof.*[4]

**1.** The debtor may notify the Court that is competent to issue a declaration of opening its insolvency proceedings of initiation of negotiations to reach a refinancing composition of those foreseen in Article 71 bis.1 and in Additional Provision four, or to obtain adhesions to an advanced proposal of composition under the terms foreseen in this Act.

In the event of requesting an out of court payment composition, once the insolvency practitioner proposed accepts office, the Business Registrar or Notary Public who has been requested to appoint the insolvency practitioner shall notify the Court that is competent to declare the insolvency proceedings, of his own motion, of opening of the negotiations.

**2.** That notification may be made at any time prior to expiry of the term established in Article 5. Once the notification has been issued prior to that moment, the duty to request voluntary declaration of opening of the insolvency proceedings shall not be required.

**3.** The Court Clerk shall order publication on the Public Insolvency Register of the statement of the resolution that records the notification lodged by the debtor or, in cases of an out of court payment composition being negotiated, by the Notary Public or Business Registrar, under the terms determined by the implementing regulations.

Should the debtor specifically request notification of the negotiations to be confidential, the order to publish the statement of the resolution shall not be issued.

The debtor may request that the confidential nature of the notification be raised at any time.

**4.** From presentation of the communication, no judicial or extrajudicial foreclosures may be performed on assets or rights that may be necessary to continue the professional or corporate activity of the debtor until any of the following circumstances concurs:

---

[4]   Amendment of Section 4 by Sole Article. Four.1 of Act 9/2015, of 25th May.
Please see, with regard to the transitory regime, Transitional Provision 1.1 thereof.
Amended by Article 1 of Act 17/2014, dated 30th September.
Amendment of Sections 1, 3 and 4 by Article 21.2 of Act 14/2013, dated 27th September.
Addition by Article 1 of Act 38/2011, dated 10th October.

a) formalisation of the refinancing agreement foreseen in Article 71 bis. 1;

b) an order is handed down admitting the application for judicial homologation of the refinancing agreement to consideration;

c) an  extrajudicial agreement on payments is adopted;

d) the necessary number of adhesions has been obtained to admit an early composition proposal to process;

e) or if the insolvency proceedings are declared open.

In his notification, the debtor shall state what foreclosures are being brought against his assets and which befall assets he considers necessary for continuity of his professional or corporate activity, which shall be recorded in the decree by which the Court Clerk declares notice of the proceedings to have been made. In the event of dispute over whether the asset is necessary, the decree may be appealed before the Court that is competent to hear the insolvency proceedings.

Foreclosure of such assets or rights that are in process shall be suspended by the Court hearing such, on submission of the resolution by the Court Clerk, recording that notification. The limitations foreseen in Paragraph One of this Section shall be raised if the Court that is competent to hear the insolvency proceedings resolves that the assets or rights affected by the foreclosure are not necessary for continuity of the professional or corporate activity and, in all cases, once the terms foreseen in the following Section have elapsed.

Nor may unique foreclosures be initiated or, where appropriate, individual judicial or extrajudicial foreclosures shall be suspended, if promoted by creditors of the financial liabilities referred to in Additional Provision Four on any other of the debtor's assets or rights, as long as documentary evidence is provided that a proportion not lower than 51 per cent of the financial liabilities has specifically supported commencement of the negotiations aimed at signing a refinancing agreement, undertaking not to commence or continue individual foreclosures against the debtor whilst such negotiations are taking place.

The terms set forth in the preceding four Paragraphs shall not prevent creditors with in rem securities from foreclosing their security interests against the properties, assets and rights their security befalls, without prejudice to the fact that, once the proceedings are initiated, they shall be halted whilst any of the actions foreseen in the first Paragraph of this

Section have not been performed or the term foreseen in the following Section has not elapsed.

In all cases, the provisions contained in this Section exclude foreclosure proceedings intended to settle Public Law credits.

**5.** Once three months have elapsed from notification to the Court, whether or not the debtor has reached a refinancing composition, or an extrajudicial payment composition, or the necessary adhesions for admission to consideration of an early composition proposal, the debtor must apply for the declaration of opening of insolvency proceedings within the following working month, unless this has already been applied for by the insolvency practitioner, or the debtor is not in a state of insolvency.

**6.** After filing the notification foreseen in this Article, no other may be filed by the same debtor within the term of one year.

**Article 6.** *Petition by the debtor.*[5]

**1.** In the writ of petition for the insolvency proceedings to be declared open, the debtor shall state whether his state of insolvency is present or whether it is foreseen as imminent.

**2.** The petition shall be accompanied by the following documents:

1. Special power of attorney to petition for insolvency. This document may be replaced by the granting of an apud acta empowerment.

2. The report stating the historic and legal history of the debtor, of the activity or activities he has performed in the last three years and on the establishments, offices or operating facilities he owns, of the causes of the state in which he finds himself and of the valuations and proposals on the viability of his aggregate assets.

If the debtor is a married person, the report shall indicate the identity of the spouse, stating the matrimonial property regime.

If the debtor is a legal person, the report shall identify the recorded shareholders or partners, the directors or liquidators and, when appropriate, the accounts' auditor, as well as whether it is part of a group of companies, listing the firms forming it, and whether its securities are listed on an official secondary market.

---

[5]   Amendment of Paragraph 2 and repeal of Paragraph 4 by Article 2 and by Sole Repealing Provision of Act 38/2011, dated 10th October.

In the case of an inheritance, the report shall provide the particulars of the deceased.

3. An inventory of assets and rights, stating their nature, the place where they are located, register identification data when appropriate, acquisition value, appropriate valuation corrections, and estimation of the present real value. An indication shall also be given of the encumbrances, liens, and charges that affect these assets and rights, stating their nature and the identifying data.

4. List of creditors, by alphabetical order, stating the identity, address and electronic mail address of each one of them, as well as the amount and maturity of the respective claims and the securities in personam or in rem constituted. If any creditor has claimed payment judicially, the relevant proceedings shall be identified and the state of the procedure indicated.

5. The staff of workers, where appropriate, and the identity of their representative body, if any.

**3.** If the debtor is legally bound to keep accounts, he shall also attach:

1. Annual accounts and, when appropriate, management reports or audit reports for the last three financial years.

2. Report on the significant changes occurred in his aggregate assets following the last annual accounts drawn up and deposited and the operations that, due to their nature, object or amount, exceed the ordinary business or trade by the debtor.

3. Intermediate financial statements prepared after the last annual accounts presented, in the event of the debtor being bound to serve notice thereof or to submit these to the supervisory authorities.

4. In the event of the debtor being part of a group of companies, as parent company, or as controlled company, the consolidated annual accounts and management report of the last three financial years and the audit report issued with regard to those accounts shall also be attached, as well as a report stating the operations performed with other companies of the group during that same period.

**4.** (Repealed)

**5.** When not accompanied by any of the documents mentioned in this Article, or if any of them lack the requisites or data demanded, the debtor must state the cause giving rise to this in his petition.

**Article 7.** *Petition by the creditor and other parties legitimated.*[6]

**1.** The creditor instigating a declaration opening the insolvency proceedings shall state in the petition the title or fact on which the petition is based pursuant to Article 2.4, as well as the origin, nature, amount, dates of acquisition, maturity, and present status of the claim, to which he shall attach documentation as evidence.

The other parties legitimated must state in their petition the capacity in which they are acting, accompanied by the document that evidences their legitimacy, or proposing the evidence to accredit it.

**2.** In any case, the petition shall state the means of evidence of which the petitioner avails himself or intends to avail himself to accredit the facts on which it is based. Witness evidence only shall not suffice.

CHAPTER II

ON THE DECLARATORY PROCEEDINGS

**Section 1. Jurisdiction and Competence**

**Article 8.** *Insolvency Court.*[7]

The Mercantile Courts of Law are competent to hear and decide on insolvency. The Mercantile Judge's jurisdiction is exclusive and excludes others in the following domains:

1. Civil actions with an economic impact lodged against the insolvent debtor's aggregate assets with the exception of those exercised in proceedings on capacity, filiation, marriage and minors referred to in Title I of Book IV of the Civil Procedure Act. They shall also hear and determine the action referred to in Article 17.1 of this Act.

2. Labour actions intended for collective extinction, amendment or suspension of employment contracts in which the employer is the insolvent debtor, as well as suspension or extinction of top management contracts; nevertheless when these measures amount to amendment of the conditions established in the collective bargaining agreement applicable to these contracts the approval of the representatives of the

---

[6]   Amendment of Paragraph one of Section 1 by Article 3 of Act 38/2011 dated 10th October.

[7]   Amendment of Sections 2, 6 and 7 by Article 4 of Act 38/2011, dated 10th October.
Amendment of Paragraph 4 by Final Provision 3.1 of Act 11/2011, dated 20th May.
Amendment of Paragraph 6 and addition of 7 by Article 17.1 of Act 13/2009, dated 3rd November.

employees shall be required. In adjudging these matters, and notwithstanding application of the specific rules of this Act, the Courts shall take into account the principles that inspire the organisation of the statutory provisions and the labour process.

Collective suspension is understood as those foreseen in Article 47 of the Workers' Statute, including temporary reduction of the ordinary working day.

3. All enforcement on properties, goods and rights pertaining to the insolvent debtor's aggregate assets, whatever the authority that may have ordered them.

4. All preservation measures that affect the insolvent debtor's aggregate assets, except those adopted in civil proceedings that are excluded from its jurisdiction in Paragraph 1. of this provision and, where appropriate, pursuant to the terms set forth in Article 52, those handed down by arbitrators in arbitration proceedings, without prejudice to the competence of the Court to resolve to suspend such, or petition for them to be raised when considered to be damaging to processing the insolvency proceedings.

5. Those that in the insolvency proceedings must be adopted in relation to legal aid, and specifically those attributed by Act 1/1996, dated 10th January, on Legal Aid.

6. Legal actions directed at claiming company debts lodged against partners who are liable subordinately for the claims of the company subject to insolvency proceedings, whenever originated, as well as actions to demand from the partners of the company subject to insolvency proceedings to pay up the unpaid stock capital or fulfilment of the ancillary commitments.

7. Legal actions directed at claiming civil liability against company directors or liquidators, de jure or de facto, and the auditors of the company subject to insolvency proceedings, for damages caused to the insolvent debtor.

**Article 9.** *Extension of jurisdiction.*[8]

**1.** The jurisdiction of the Court is extended to all the prejudicial civil, except those excluded in Article 8, the administrative or labour matters directly related to the insolvency or whose resolution is necessary for proper performance of the insolvency proceedings.

---

[8]   Amended by Article 6 of Act 38/2011, dated 10th October.

**2.** The decision on the matters referred to in the preceding Section shall not take effect outside the insolvency proceedings in which it arises.

**Article 10.** *International and territorial competence.*[9]

**1.** The competence to declare and deal with the insolvency lies with the Mercantile Court of Law in whose territory the debtor has the centre of his main interests. If the debtor has his domicile in Spain and such domicile does not coincide with the centre of his main interests, the Mercantile Court of Law in whose territory the domicile is situated shall also be competent, at the petitioner's creditor choice.

The centre of main interests shall be understood as the place where the debtor usually performs the management of those interests, in a form recognisable by third parties. In the case of a legal person, the centre of its main interests is presumed to be at the place where the registered office is located. Changes of registered office performed in the six months preceding the petition for insolvency shall be ineffective for these purposes.

The effects of this insolvency, which shall be considered the "main insolvency proceedings" from an international perspective, shall have a universal scope, including all the assets of the debtor, whether they are located within or without Spain. In the event of insolvency proceedings being commenced upon assets located in a foreign state, the rules of co-ordination foreseen in Chapter III of Title IX of this Act shall be taken into account.

**2.** If petitions to declare insolvency have been submitted before two or more competent courts, preference shall be granted to the one where the first petition was lodged.

**3.** If the centre of main interests is not in Spanish territory, but the debtor has an establishment here, the Mercantile Court of Law in whose territory it is located shall be competent and, if there are several, where any of them is situated, at the petitioner's choice.

An establishment is understood as any place of operations at which the debtor carries out a non-transitory economic activity with human means and goods.

---

[9]    Deletion of Paragraph 4 and renumbering of 5 as 4 by Article 7 of Act 38/2011, dated 10th October.

The effects of this insolvency, which in the international scope shall be considered a "territorial insolvency"; shall be limited to the assets of the debtor; whether or not they are vested for his activity, that are located in Spain. In the event of the State where the debtor has the centre of main interests opening insolvency proceedings, the co-ordination rules foreseen in Chapter IV of Title IX of this Act shall apply.

**4.** The Court shall examine its competence on its own motion and shall determine whether it is based on Paragraph 1 or Paragraph 3 of this Article.

**Article 11.** *International scope of the jurisdiction.*

In the international field, the jurisdiction of the insolvency Court only includes hearing and deciding actions that have their legal grounds in the insolvency legislation and that are immediately related to the insolvency proceedings.

**Article 12.** *Plea of jurisdiction.*[10]

**1.** The debtor may raise the matter of territorial competence by plea of jurisdiction within the five days following that on which he has been summoned. The other legitimated parties may also raise it when petitioning for a declaration opening the insolvency proceedings, within the term of 10 days from the publication ordered in Subparagraph Two of Paragraph 1 of Article 23.

**2.** Filing a plea of jurisdiction, in which the petitioner shall be bound to indicate what the competent body to hear and determine the insolvency proceedings is, shall not suspend the insolvency proceedings. Under no circumstances whatsoever shall the Court issue a pronouncement on the opposition by the insolvent debtor without previously having resolved the matter of competence with a hearing of the Public Prosecutor. In the event of admitting the incompetence, the Court shall inhibit itself in favour of the relevant competent body, summoning the parties to appear before the latter and sending the written record of the proceedings up to that moment.

**3.** Everything performed in the insolvency proceedings shall be valid even though the plea of jurisdiction is admitted.

---

[10]    Amendment of Paragraph 1 by Article 6.1 of Royal Decree-Law 3/2009, dated 27th March.

**Catálogo de Publicaciones**

## Section 2. On deciding on the petition

**Article 13.** *Term to decide.*[11]

**1.** On the same day, or if not possible, the following working day after distribution, the Court shall examine the petition to declare the insolvency proceedings open and, if the Court deems it complete, shall decide on the admissibility thereof pursuant to Articles 14 or 15.

If the petition refers to a credit institution or an investment services company, once the Court has adopted a preliminary decision thereon, the Court Clerk shall serve notice thereof on the Bank of Spain and on the National Stock Exchange Commission, and shall request the list of the payment and clearing systems for securities and derivative financial instruments to which the firm affected belongs and the name and registered office of their manager, pursuant to provisions contained in the applicable special legislation.

The Court Clerk shall also serve notice of the petition on the Directorate-General of Insurance and Pension Funds, if it refers to an insurance undertaking; or on the Ministry of Labour and Social Affairs, if it concerns an industrial accident and diseases mutual company, or on the National Stock Exchange Commission if it concerns a company that has issued securities or financial instruments traded on an official secondary market.

**2.** If the Court considers that the petition or documentation attached thereto is subject to any procedural or material defect, or is in any way insufficient, the Court shall grant the petitioner a term for justification or correction, which may not exceed five days.

When justification or correction is effected within that term, the Court shall, on the same day or, if not possible, on the following working day, decide pursuant to the provisions of Articles 14 or 15. If this were not so, the Court shall hand down an order declaring it is not appropriate to admit the petition. Only an appeal to the same Court may be lodged against this resolution.

---

[11]    Amendment of Paragraph one of Section 2 by Article 8 of Act 38/2011, dated 10th October.
Amendment of Paragraphs two and three of Section 1 by Article 17.2 of Act 13/2009, dated 3rd November.

**Article 14.** *Decision on the petition by the debtor.*[12]

**1.** When the petition has been lodged by the debtor, the Court shall issue an order declaring the opening of the insolvency proceedings if from the documentation produced, appreciated overall, the existence of any of the facts foreseen in Paragraph 4 of Article 2 can de deduced or of others that evidence the insolvency alleged by the debtor.

**2.** Only an appeal to the same Court may be lodged against the resolution refusing the initiation of insolvency proceedings.

**Article 15.** *Decision regarding petition by another legitimated party and accumulation of petitions.*[13]

**1.** When the petition has been lodged by a creditor and is based on a failed seizure or investigation of assets or that has given rise to an administrative or judicial declaration of insolvency, the Court shall hand down an order declaring the opening of insolvency proceedings on the first working day thereafter.

The debtor and other parties concerned may file the appeals foreseen in Article 20 against such an order.

**2.** When the petition has been presented by any legitimated party other than the debtor and for a reason other than that foreseen in the preceding Paragraph, the Court shall hand down an order to admit it to consideration, and summoning the debtor pursuant to the terms set forth in Article 184, with notification of the petition within the term of five days, within which the proceedings shall be notified and opposition to the petition may be made, proposing the means of proof of which it intends to avail itself.

Once the petition is admitted to consideration, those lodged thereafter shall be accumulated to the one first distributed and shall be attached to the proceedings, the new applicants being declared to have appeared without backdating the proceedings.

**3.** Once the notification foreseen in Article 5 bis has been made and while the term of three months foreseen in that premise has not elapsed, no

---

[12]  Deletion of Paragraph 2 and renumbering of 3 as 2 by Article 9 of Act 38/2011, dated 10th October.

[13]  Amendment of Paragraph one of Section 3 by Article 21.3 of Act 14/2013, dated 27th September.
Amended by Article 10 of Act 38/2011, dated 10th October
Addition of Paragraph 3 by Article 10.2 of Royal Decree-Law 3/2009, dated 27th March.

petitions for insolvency proceedings shall be admitted at the instance of other parties legitimated other than the debtor or, in the proceedings foreseen in Title X of this Act, other than those of the debtor or the insolvency practitioner.

Petitions lodged thereafter shall only be attended when the term of one working month has elapsed as foreseen in said Article, if the debtor has not lodged a petition to open insolvency proceedings. If the debtor lodges a petition to open insolvency proceedings within that term, it shall first be processed pursuant to Article 14. Once the declaration opening the insolvency proceedings is issued, the petitions previously submitted and those submitted thereafter shall be attached to the proceedings, the applicants being deemed to have appeared.

**Article 16.** *Forming Section One.*[14]

Once the insolvency proceedings are opened, or the petition for a declaration opening the insolvency proceedings is admitted, the Court shall order formation of Section One, which shall be headed by the petition.

**Article 17.** *Preservation measures prior to a declaration opening the insolvency proceedings.*

**1.** At the request of the party legitimated to petition for compulsory insolvency, the Court, on admitting the proceedings, may adopt the preservation measures the Court deems necessary to assure the integrity of the debtor's aggregate assets, pursuant to the provisions foreseen in the Civil Procedure Act.

**2.** The Court may ask the petitioner to provide a bond to cover eventual damages and losses that the preservation measures may cause to the debtor, if the petition to declare the insolvency proceedings open is finally rejected.

**3.** Once the insolvency proceedings are declared open, or the petition rejected, the insolvency Court shall decide on the maintenance of the preservation measures.

---

[14]    Amended by Article 11 of Act 38/2011, dated 10th October

**Article 18.** *Admission of the claim or opposition thereto by the debtor.*[15]

**1.** In the event of the petition being admitted, if the debtor summoned admits the petitioner's claim, or does not file opposition within the term, the Court shall hand down an order declaring the insolvency proceedings open. The same resolution shall be adopted if, after petition by any party legitimated and before being summoned, the debtor has instigated his own insolvency.

**2.** The debtor may base his opposition on the untruthfulness of the facts on which the petition is based or that, even when the facts are true, that he is not in a state of insolvency. In the latter case, the burden of proof of solvency shall lie with the debtor and, if legally obliged to keep accounts, that evidence must be based on those kept by him pursuant to the law.

When opposition has been formulated by the debtor, on the following day the Court Clerk shall summon the parties to a hearing to be held within the term of three days, advising them that they must appear there with all the means of evidence that may be produced at the hearing and, if the debtor is legally bound to keep accounts, warning him that he must appear with the accounting books it is mandatory for him to keep.

**Article 19.** *Hearing.*[16]

**1.** The hearing held shall be chaired by the Judge, within ten days following the opposition having been formulated.

**2.** If the debtor were not to appear, the Court shall hand down an order declaring the opening of the insolvency proceedings. If he appears, and the claim held by the creditor instigating has matured, the debtor shall deposit the sum of that claim at the hearing, at the creditor's disposal, or shall accredit having done this before the hearing or shall state the cause of failure to do so.

Should several creditors have appeared and their insolvency petitions have accumulated, the debtor must deposit the sums owed to all of them, under the same conditions stated.

---

[15]    Amendment of the second Paragraph of Section 2 by Article 12 of Act 38/2011, dated 10th October. Amendment of the second Paragraph of Section 2 by Article 17.3 of Act 13/2009, dated 3rd November.

[16]    Amendment of Paragraph 4 by Article 17.4 of Act 13/2009, dated 3rd November.

**3.** Should the petitioner not appear or, having done so, not ratify his petition, and the Court considers there is an objective case to declare the insolvency proceedings open, pursuant to the provisions set forth in Article 2, and when the proceedings show the existence of other possible creditors, before handing down the order to resolve the petition, the Court shall grant these creditors a term of five days to formulate the allegations they may deem convenient.

**4.** In the event of failure to deposit and in those that, in spite of this having been done, the creditor has ratified his petition, as well as when the claim of the party instigating has not matured, or he does not have creditor status, the Court shall hear the parties and their Solicitors as to the appropriateness or otherwise of declaring open the insolvency proceedings and shall decide on the adequacy of the means of evidence proposed or that may be proposed at that hearing, resolving to immediately perform those that may be carried out on the same day. The Court Clerk shall set the briefest possible term for the remaining ones, without such term exceeding twenty days.

**5.** The Court may directly question the parties, experts, and witnesses and shall examine the evidence brought before it pursuant to the evaluation rules foreseen in the Civil Procedure Act.

**Article 20.** *Resolution on the petition and appeals.*[17]

**1.** Once the evidence declared pertinent has been obtained, or once the term set for this has elapsed, within the following three days, the Court shall hand down an order declaring the opening of the insolvency proceedings or rejecting the petition. In the first case, the costs shall be considered claims against the aggregate assets; in the second, they shall be imposed on the petitioner, except if the Court considers and so reasons that the case had severe doubts of fact or law. In the event of the petition for the opening of insolvency proceedings being rejected, once the order is final and at the request of the debtor and using the procedure laid down Articles 712 and following of the Civil Procedure Act, the Court shall determine the damages and losses that, if any, may have been caused as a result of the petition for insolvency proceedings and, once determined, the party petitioning for the opening of the insolvency proceedings shall be required to pay them, proceeding without delay to their forcible exaction should they not be paid.

---

[17]    Amendment of Paragraph 4 by Article 13 of Act 38/2011, dated 10th October.
Amendment of Paragraph 4 by Article 6.2 of Royal Decree-Law 3/2009, dated 27th March.

**2.** The remedy of appeal to the Higher Court shall be allowed against the decision of acceptance or rejection of the petition for opening insolvency proceedings in all cases. Such an appeal shall not have the effect of suspension unless, exceptionally, the Court resolves to the contrary; in this case, it shall decide on the total or partial maintenance of the preservation measures that may have been adopted. If the aim is to appeal solely any of the other pronouncements contained in the order declaring the opening of the insolvency proceedings, the parties may oppose the specific measures adopted by remedy of repeal to the same Court.

**3.** A debtor who has not petitioned for the order declaring the opening of insolvency proceedings and any person accrediting legitimate interest shall be legitimated to appeal, even though they may not have previously appeared.

Only the party petitioning for the opening of the insolvency proceedings shall be entitled to appeal the order of rejection.

**4.** The term to file an appeal to the Court and to prepare the appeal to a Higher Court shall be calculated, with regard to the parties who have appeared, from notice being served of the order, and with regard to the other parties legitimated, from the publication of the extract of the declaration of insolvency in the "Official State Gazette".

**5.** Rejection of the appeals shall give rise to the party appealing being condemned to pay costs.

### Section 3. On the declaration of insolvency proceedings

**Article 21.** *Order declaring the opening of insolvency proceedings.*[18]

**1.** The order declaring the opening of the insolvency proceedings shall contain the following pronouncements:

> 1.The compulsory or voluntary nature of the insolvency, stating whether, when appropriate, the debtor has applied for liquidation, or has submitted an early composition proposal.

---

[18]    Amendment of Sections 1.1 and 4 by Article 14 of Act 38/2011, dated 10th October.
Amendment of Paragraph 5 by Article 17.5 of Act 13/2009, dated 3rd November.
Amendment of Paragraph 1.5 and first Paragraph of 5 by Articles 6.3 and 6.4 of Royal Decree-Law 3/2009, dated 27th March.

Catálogo de Publicaciones

2.The effects on the rights of management and disposal of the debtor with regard to his aggregate assets, as well as the appointment and powers of the insolvency practitioners.

3.In the case of compulsory insolvency, the demand for the debtor to submit the documents numbered in Article 6 within the term of ten days from notice being served of the order.

4.When appropriate, the preservation measures the Court considers necessary to assure the integrity, conservation or management of the debtor's aggregate assets, until the insolvency practitioners accept office.

5.Calling the creditors to lodge with the insolvency practitioners their claims, within the term of one month from that following publication in the Official State Gazette of the order declaring insolvency, as set forth in Article 23.

6.The publicity that is to be given to the declaration of opening the insolvency proceedings.

7.When appropriate, the decision on forming a separate procedure, pursuant to the provisions contained in Article 77.2 in relation to dissolution of the joint matrimonial property regime.

8.If appropriate, the decision on the appropriateness of applying the specially simplified procedure referred to in Chapter II of Title VIII of this Act.

**2.** The order shall immediately take effect, shall open the common procedural phase of the insolvency proceedings, which shall include the actions foreseen in the first four Titles of this Act, and shall be executive, even when not final.

**3.** Once the insolvency proceedings are declared open, formation of Sections Two, Three and Four shall be ordered. Each one of these Sections shall be headed by the orders or, when appropriate, the ruling that may have ordered their formation.

**4.** The insolvency administration shall serve an individual notice, without delay, to each one of the creditors whose identity and domicile are recorded in the insolvency proceedings, informing them that they have been declared open and of their duty to lodge their claims in the manner established by the law.

The notice shall be served by telematic, computer or electronic means when the electronic address of the creditor is recorded.

The notification shall be addressed by electronic means to the State Tax Administration Agency and the General Treasury of the Social Security, through the means these provide at their relevant electronic seats, whether or not there is a record of their creditor status. The representatives of the workers, if any, shall also be notified, informing them of their right to appear as a party in the proceedings.

**5.** The Court Clerk shall serve notice of the order onto the parties that have appeared. If the debtor has not appeared, the publication foreseen in Article 23 shall have the effects of notice being served of the order with regard to him.

If the insolvent debtor is a lending institution or an investment service company participating in a payment and clearing system for securities or derivative financial instruments, the Court Clerk shall serve notice of the order on the same day as issued on the Bank of Spain, on the National Stock Exchange Commission, and on the manager of the systems to which the firm affected belongs, pursuant to the provisions established in the special legislation to which Additional Provision Two refers.

The Court Clerk shall also serve notice of the order on the National Stock Exchange Commission when the insolvent debtor is a company that has issued securities listed on an official market.

If the insolvent debtor is an insurance undertaking, the Court Clerk shall serve notice of the order on the Directorate General of Insurance and Pension Funds, with the same swiftness, and if an industrial accident and disease mutual company, he shall serve notice thereof on the Ministry of Labour and Social Affairs with the same swiftness.

**Article 22.** *Voluntary and compulsory insolvency.*[19]

**1.** The insolvency proceedings shall be considered voluntary when the first of the petitions submitted was that by the debtor himself. In the other cases, the insolvency shall be considered compulsory.

---

[19]    Amendment of the second Paragraph of Section 1 by Article 15 of Act 38/2011, dated 10th October. Addition of Paragraph two of Section 1 by Article 10.3 of Royal Decree-Law 3/2009, dated 27th March.

For the purposes of this Article, the petition by the debtor made within the term of Article 5 bis shall be understood to have been submitted when the communication foreseen in that Article was made.

**2.** The provisions of the preceding Paragraph notwithstanding, insolvency proceedings shall be considered compulsory when, within the three months prior to the date of petition by the debtor, a petition has been submitted by any other legitimated party and has been admitted to consideration, even though that party might have withdrawn, not have appeared, or not ratified his petition.

**Article 23.** *Publicity.*[20]

**1.** Publicity of the declaration of opening the insolvency proceedings, as well as the remaining notices, communications and formalities of the proceedings shall preferably be made by telematic, computer and electronic means, in the manner set out by the implementing regulations, guaranteeing the security and integrity of the communications.

An extract of the statement of the opening of the insolvency proceedings shall be published with the greatest urgency and free of charge in the Official State Gazette, and shall contain only the indispensable data to identify the insolvent debtor, including his tax identity number, the competent court, the case number and the General Number of the Proceedings, the date of the court order declaring opening of the insolvency proceedings, the term established to lodge the claims, the identity of the insolvency practitioners, the postal address and electronic address, as chosen by the creditors to notify their claims pursuant to Article 85, the suspension or intervention regime of the rights of the insolvent debtor and the web site of the Public Insolvency Register where the resolutions arising from the insolvency proceedings shall be published.

**2.** The Court, on its own motion or at the request of the party concerned, may order any complementary publicity it may consider indispensable for the effective diffusion of the insolvency procedure in the actual declaration opening the insolvency proceedings, or in a subsequent resolution.

**3.** The serving of notices of the proceedings by edicts shall preferentially be performed by telematic means from the Court to the relevant media.

---

[20]   Amendment of Paragraph two of Section 1 by Article 16 of Act 38/2011, dated 10th October
Amendment of Paragraph three of Section 3 by Article 17.6 of Act 13/2009, dated 3rd November.
Amended by Article 6.5 of Royal Decree-Law 3/2009, dated 27th March.

Exceptionally, and if what is provided in the preceding Paragraph is not possible, the proceedings with the edicts shall be delivered to the Barrister-at-Law of the petitioner for the insolvency, who shall without delay send them to the relevant media for publicity.

If the petitioner for insolvency is a Public Administration that is acting under representation and defended by its legal services, notice of the proceedings shall be effected directly by the Court Clerk via the publicity media.

**4.** The other resolutions that must be published by means of edicts pursuant to this Act shall be published in the Public Insolvency Register and on the bulletin board of the Court.

**5.** The order declaring the opening of the insolvency proceedings, as well as the rest of the insolvency resolutions that must be publicised pursuant to the Act shall be placed on the Public Insolvency Register pursuant to the procedure the implementing regulations shall establish.

**Article 24.** *Register publicity.*[21]

**1.** If the debtor is a natural person, the declaration opening the insolvency proceedings, stating its date, intervention or, if appropriate, suspension of his rights of management and disposal, as well as the appointment of insolvency practitioners, shall be registered, preferably by telematic means, at the Civil Register

**2.** If the debtor is a subject to entry in the Business Register, it shall be subject to inscription on the sheet open for the company, preferably by telematic means, the orders and judgments declaring voluntary or mandatory reopening of the insolvency proceedings, opening of the composition phase, of approval of the composition, opening the winding-up phase, approval of the winding-up plan, conclusion of the insolvency proceedings and the resolution on the challenge of the order of conclusion, forming the classification piece and the classification sentence of the insolvency proceedings under culpable terms, as well as all orders handed down on matters of intervention or suspension of the rights of administration and disposal of the debtor over the assets and rights that form the aggregate assets shall be subject to inscription on the sheet open for the

---

[21]    Amended by Article 17 of Act 38/2011, dated 10th October.
Amendment of Paragraph three of Section 5 by Article 17.7 of Act 13/2009, dated 3rd November.
Amended by Article 6.5 of Royal Decree-Law 3/2009, dated 27th March.

company. When not recorded on the sheet open for the company, shall previously be registered at the Register.

**3.** In the case of legal persons that cannot register at the Business Register and that are recorded on another public register, the Court shall order their inscription, preferably by telematic means, under those same circumstances stated in the preceding Paragraph.

**4.** If the debtor has property or assets registered on the public registers, the declaration opening the insolvency proceedings, the intervention, or when appropriate the suspension of his rights of management and disposal, shall be preventively annotated on the relevant folio for each one, stating the date, as well as the appointment of the insolvency practitioners.

Once the preventive annotation or inscription is performed, no subsequent seizures or attachments may be recorded after the declaration opening the insolvency proceedings, other than those ordered by the Court in the proceedings, except as established in Paragraph 1 of Article 55 of this Act.

**5.** The registrations referred to in the preceding Sections shall be performed by virtue of the order issued by the Court Clerk. The order shall state whether the relevant resolution is final or not. In any case, the preventive annotations that must be made at public registers of persons or of assets due to lack of final status of the resolution shall expire four years from the date of their annotation and they shall be cancelled at its own motion, or at the request of any interested party. The Court Clerk may decree their extension for a further four years.

**6.** Notice of the necessary documentation to perform the entries shall preferentially be performed by telematic means from the Court to the relevant registers.

Exceptionally and if what is foreseen in the preceding Paragraph is not possible, notice shall be served by edicts delivered to the Barrister-at-Law to the petitioner for insolvency, with the necessary orders to have the register entries foreseen in this Article effected without delay.

If the petitioner for insolvency is a Public Administration that is acting under representation and defended by its legal services, notice of the proceedings shall be effected directly by the Court Clerk to the relevant registers.

**7.** The implementing regulations may establish co-ordination mechanisms between the diverse public registers on which, according to the terms foreseen in the preceding Sections, they shall record the order declaring the opening and other circumstances of the insolvency proceedings.

CHAPTER III

ON RELATED INSOLVENCY PROCEEDINGS[22]

**Article 25.** *Declaration of joint insolvency proceedings against various debtors.*[23]

**1.** A petition may be lodged to declare joint insolvency proceedings against debtors who are spouses or who are administrators, partners, members or partners personally liable for the debts of a same legal person, as well as when they form part of the same corporate group.

**2.** The creditor may submit a petition for declaration of joint insolvency proceedings of several of its debtors, when they are spouses, when confusion of assets exists between them, or when they form part of the same corporate group.

**3.** The Court may declare joint insolvency proceedings against two persons who have registered as a common-law marriage, at the request of the members of the couple or a creditor, when there are signs of the existence of specific or tacit pacts, or of conclusive facts that give rise to the unequivocal will of the parties cohabitating to establish common assets.

**4.** The competent Court to declare opening of joint insolvency proceedings is that of the place where the debtor with the greatest liabilities has his main centre of interests and, if it is a corporate group, that of the controlling company or, in cases in which the insolvency proceedings are not brought against the latter, that of the company with the largest liabilities.

**Article 25 bis.** *Accumulation of insolvency proceedings.*[24]

**1.** Any of the debtors, or any of the insolvency practitioners may petition the Court, by reasoned writ, for accumulation of the following insolvency proceedings already declared open:

---

[22]    Addition by Article 18 of Act 38/2011, dated 10th October

[23]    Amended by Article 18 of Act 38/2011, dated 10th October.

[24]    Addition by Article18 of Act 38/2011, dated 10th October.

1.Of those forming part of a corporate group;

2.Of those who have mingled assets;

3.Of the directors, partners, members or parties personally liable for the debts of the legal person;

4.Of those who are members or stakeholders of an entity without legal personality, and who are personally liable for trading debts contracted in its name;

5.Of spouses;

6.Of the registered civil partner, when any of the circumstances foreseen in Article 25.3 concurs.

**2.** Should a petition not be filed by any of the debtors or by the insolvency practitioners, the accumulation may be requested by any of the creditors by reasoned writ.

**3.** Accumulation shall be appropriate even though the insolvency proceedings have been declared by different courts. In that case, the competence to process accumulated insolvency proceedings shall lie with the Court that is hearing the insolvency proceedings against the debtor with the highest liabilities at the moment of filing the petition for insolvency proceedings or, where appropriate, of insolvency proceedings of the parent company, or when insolvency proceedings have not been declared against it, that which has first heard the insolvency proceedings against any of the companies in the group.

**Article 25 ter.** *Co-ordinated formalisation of the insolvency proceedings.*[25]

**1.** Insolvency proceedings declared jointly and accumulated shall be processed in co-ordination, without consolidation of the joint assets.

**2.** Exceptionally, inventories and lists of creditors may be consolidated in order to prepare the report by the insolvency practitioners when there are mingled assets and it is not possible to distinguish the ownership of assets and liabilities without incurring an inappropriate expense or delay.

---

[25]  Addition by Article 18 of Act 38/2011, dated 10th October.

TITLE II

**ON INSOLVENCY PRACTITIONERS**

**Article 26.** *Formation of Section Two.*

Once the insolvency proceedings are declared open as provided in the preceding Articles, the Court shall order formation of Section Two, which shall include everything related to the administration in the insolvency proceedings, the appointment and the status of the insolvency practitioners, the setting out of their powers and the exercise thereof, the giving of accounts and, when appropriate, regarding the liability of the insolvency practitioners.w

CHAPTER I

ON APPOINTMENT OF INSOLVENCY PRACTITIONERS

**Article 27.** *Subjective conditions for appointment of insolvency practitioners.*[26]

**1.** A single insolvency practitioner shall administer the insolvency.

**2.** Only natural or legal persons who are registered in Section Four of the Public Insolvency Register and who have declared they are available to perform the tasks of insolvency practitioner within the scope of the territorial competence of the court of the insolvency proceedings may be appointed.

**3.** Natural and legal persons who fulfil the requisites set out by the implementing regulations may register in Section Four of the Public Insolvency Register. Such requisites refer to the required qualifications, to the experience to be proven and to the sitting or passing of specific tests

---

[26]    Amended by Article 2 of Act 17/2014, dated 30th September.
*Please bear in mind that this amendment shall come into force on approval of its implementing regulation, as established in Transitional Provision 2 of said Act.*
Amended by Article 19 of Act 38/2011, dated 10th October.
Amendment of Paragraph 4 by Article 7.1 of Royal Decree-Law 3/2009, dated 27th March.

    **Catálogo de Publicaciones**

or courses. Specific requisites may be established to practise as an insolvency practitioner in medium and large-scale insolvency proceedings.

**4.** For the purposes of appointing insolvency practitioners, a distinction shall be made between small, medium or large-scale insolvency proceedings. The implementing regulations shall also establish the characteristics that allow definition of the scale of the insolvency proceedings.

**5.** Appointment of the insolvency practitioner shall befall the natural or legal person on the list of Section Four of the Public Insolvency Register obtained by correlative rotation and who, fulfilling the conditions established in the preceding Sections, has declared, at the time of requesting inscription on that register, or thereafter, that he wishes to act within the scope of territorial competence of the court appointing him. The first appointment from the list shall be performed by draw.

Notwithstanding this, in large scale insolvency proceedings, the Court may perform a reasoned appointment of an insolvency practitioner other than the one assigned by correlative rotation whose alternative receiver profile it deems to be better suited to the characteristics of the insolvency proceedings. The Court shall reason its appointment according to any of the following criteria: the specialisation or proven prior experience in the sector of activity of the debtor, experience with the financial instruments used by the debtor for the purposes of its financing, or with proceedings giving rise to material modification of working conditions, or collective suspension or extinction of labour relations.

**6.** In the case of insolvency proceedings affecting a credit institution, the Court shall appoint the insolvency practitioner from among those proposed by the Fund for Orderly Bank Restructuring. It shall also appoint practitioners from among those proposed by the National Stock Exchange Commission in the case of entities respectively subject to its supervision, or that by the Insurance Compensation Consortium, in the case of insurance undertakings.

**7.** As an exception to the terms set forth in Section 1, in insolvency proceedings where there is a case of public interest to justify such, the Court hearing the insolvency proceedings, on its own motion or at the request of a creditor with public status, may appoint a creditor Public Administration or a creditor Public Law entity, linked to or dependent on it, as a second insolvency practitioner. In that case, the representation of the practitioner must befall a public officer who has graduate university

qualifications, a diploma or degree, to perform its duties in the legal or financial field, and his liability regime shall be that specified in the administrative legislation. In such cases, representation of the insolvency practitioners before third parties shall be assigned to the first insolvency practitioner.

The creditor Public Administration or entity related to it may renounce such an appointment.

**8.** In cases of related insolvency proceedings, the competent Court to hear such may appoint, to the extent where possible, a sole insolvency practitioner, appointing delegate assistants.

In the case of accumulation of insolvency proceedings already declared, the appointment may befall one of the already existing insolvency practitioners.

**Article 27 bis.** *Insolvencies of special transcendence for the purposes of appointment of the insolvency practitioners.*[27]

(Deleted).

**Article 28.** *Incapacities, incompatibilities, and prohibitions.*[28]

**1.** The following persons may not be appointed insolvency practitioners:

a) Those who may not be directors of a public or private limited company.

b) Those who have provided any kind of professional services to the debtor, or persons especially related to him within the last three years, including those who have shared exercise of professional activities of the same or different nature during that term.

c) Those who, being registered in Section Four of the Public Insolvency Register, are to be found, whatever their condition or profession, in any of the situations referred to in Article 13 of Royal Legislative Decree 1/2011, dated 1st July, that approves the Consolidated Text of the

---

[27]  Deletion by Article 3 of Act 17/2014, dated 30th September.
Addition by Article 19 of Act 38/2011, dated 10th October.

[28]  Amended by Article 4 of Act 17/2014, dated 30th September.
Amended by Article 2 of Royal Decree-Law 4/2014, dated 7th March.
Amendment of Sections 2 to 4 and 6 by Article 20 of Act 38/2011, dated 10th October
Aggregated by Paragraph 6 of Article 8.1 of Royal Decree-Law 3/2009, dated 27th March.

Accounts Auditing Act, in relation to the actual debtor, its directors or administrators, or with a creditor that represents more than 10 per cent of the aggregate liabilities of the insolvency proceedings.

d) Those who are especially related to any person who has provided any kind of professional services to the debtor, or to persons especially related to him in the last three years.

**2.** In the event of there being sufficient persons available on the relevant list, persons who have been appointed to such office by the same court in three insolvency proceedings in the previous two years may not be appointed to such office. To these ends, the appointments made in the insolvency proceedings of companies belonging to the same corporate group shall be calculated as one alone.

Nor may those who have been severed from such office within the previous three years be appointed as insolvency practitioner, nor appointed by the legal person when it has been appointed as insolvency practitioner, nor those who are disqualified pursuant to Article 181, by final ruling of disapproval of accounts in previous insolvency proceedings.

**3.** Except for legal persons registered in Section Four of the Public Insolvency Register, those who have personal or professional bonds between them may not be appointed as insolvency practitioners in the same insolvency proceedings. The rules established in Article 93 shall be applied to ascertain personal bonds.

It shall be understood that professional bonds exist between persons between whom there are, de facto or de jure, relations of provision of services, collaboration or dependence, during the two years prior to the petition to open insolvency proceedings, regardless of the legal title that may be attributed to such relations.

**4.** The rules set forth in this Article shall apply to the representatives of the National Stock Exchange Commission, of the Fund for Orderly Bank Restructuring, Insurance Compensation Consortium, and any other creditor Public Administrations, with the exception of the prohibitions due to office or public duty, of those set forth in Paragraph two of Section 3 of this Article and those established in Paragraph 2.2. of Article 93.

**5.** Those who have issued the report referred to in Article 71 bis.4 of this Act in relation to a refinancing effort reached by the debtor before his

insolvency was declared open may not be appointed insolvency practitioner.

### Article 29. *Acceptance.*[29]

**1.** The appointment of the administrator shall be notified to the party appointed by the fastest means. Within the five days following receipt of the notice, the party notified shall appear before the Court to prove that he has taken civil liability insurance or an equivalent security in proportion to the nature and scope of the risk covered pursuant to the provisions contained in the implementing regulations, to respond for possible damages in exercise of his duties, and declare whether or not he accepts the commission. When the insolvency practitioner is a legal person, it shall be required to take out civil liability insurance or an equivalent security.

Should the insolvency practitioner be subject to any cause of barring, he shall be bound to declare such. After office is accepted, the Court Clerk shall issue and deliver the appointee a document proving his status as insolvency practitioner.

That document of proof shall be returned to the Court at the moment when severance of the insolvency practitioner takes place for any reason.

**2.** Should the appointee not appear, not have taken out a civil liability insurance policy or a sufficient security, or not accept the commission, the Court shall immediately proceed to a new appointment. Whoever does not appear for a due cause does not hold an insurance policy or does not accept the office, may not be appointed as a practitioner in insolvency proceedings that may be conducted in the same judicial district for a term of three years.

**3.** Once office is accepted, the appointee may only resign for grave reasons.

**4.** On accepting office, the insolvency practitioner shall provide the Court the postal and electronic addresses to which credit claims must be sent, as well as any other notification.

**5.** Acceptance shall not be necessary when, in application of Article 27, the appointment befalls technical personnel of the National Stock Exchange

---

[29]    Amended by Article 21 of Act 38/2011, dated 10th October.
Amendment of Paragraph one of Section 1 by Article 17.8 of Act 13/2009, dated 3rd November.

Commission, a fund guarantee fund or the Insurance Compensation Consortium. Notwithstanding this, within the term of five days following receipt of the appointment, they shall provide the Court the postal and electronic addresses to which they shall send credit claims, as well as any other notification.

**6.** The electronic address stated shall fulfil the technical conditions for security and electronic communications with regard to the record of transmission and reception, the dates and the full content of the communications.

**Article 30.** *Representation of insolvency practitioners that are legal persons.*[30]

**1.** When the appointment of an insolvency practitioner befalls a legal person, on accepting office, it shall notify the identity of the natural person who is to represent it to undertake management of the tasks to perform the duties of its office.

**2.** The legal persons appointed shall be subject to the same regime of incompatibilities and prohibitions foreseen in Article 28. Likewise, when a natural person is appointed as receiver, he shall notify the court whether he is a member of any corporation of a professional nature in order to apply the same regime of incompatibilities to the remaining partners or collaborators.

**3.** The regime of incompatibilities, prohibitions, disqualification, liability and separation as established for insolvency practitioners shall be applicable to the representative of the legal person appointed. Persons who have acted as insolvency practitioner or representative thereof at the same Court in three insolvency proceedings within the preceding two years may not be appointed as representative, with the exceptions stated in Article 28.

**4.** When the legal person has been appointed due to its professional qualification, the natural person it appoints as its representative must fulfil that requisite.

---

[30]   Amendment of Paragraph 1 by Article 5 of Act 17/2014, dated 30th September.
Second Paragraph added to Section 1 by Article 22 of Act 38/2011, dated 10th October.

**Article 31.** *Delegate assistants.*[31]

**1.** When the complexity of the insolvency so requires, the insolvency practitioner may petition the Court for authorisation to delegate certain duties, including those related to continuation of the activity of the debtor, upon the assistants he may propose, stating the criteria to establish their remuneration.

When there is a sole insolvency practitioner, except in the cases of the legal persons recorded in the final Section of Article 27.1, when the Court considers according to the specific circumstances, it may appoint, with prior hearing of the insolvency practitioner, a delegate assistant who holds the professional qualifications the insolvency practitioner does not have, and upon whom it may delegate its functions as set forth in the preceding Paragraph.

Appointment of at least one delegate assistants shall be mandatory:

    1. For companies with dispersed establishments in the territory.

    2. For large sized companies.

    3. When an extension is requested to issue the report.

    4. In related insolvency proceedings in which a sole insolvency practitioner has been appointed.

**2.** If the Court were to grant the authorisation, it shall appoint the assistants, shall specify their delegate duties, and determine their remuneration, which shall be borne by the insolvency practitioners and, except if specifically agreed otherwise, in proportion to that due to each one of them. No appeal whatsoever may be made against the decision by the Court, but the request may be repeated if the circumstances giving rise to refusal change.

**3.** The regime of incapacities, incompatibilities, prohibition, disqualification, and liability established for insolvency practitioners and their representatives shall be applicable to the delegate assistants.

---

[31]   Renumbering by Article 7 of Act 17/2014, dated 30th September.
*Its previous numbering was Article 32.*
Amended by Article 23 of Act 38/2011, dated 10th October.

4. Appointment of the delegate assistants shall be performed without prejudice to collaboration with the insolvency practitioners by the staff at their service or that dependent on the debtor.

**Article 32.** *Objection.*[32]

**1.** Insolvency practitioners may be rejected by any of the persons legitimated to petition for a declaration opening the insolvency proceedings.

**2.** The causes for disqualification are the circumstances constituting incapacity, incompatibility or prohibition referred to in Article 28, as well as those established in the civil procedural legislation for disqualification of experts.

**3.** The disqualification shall be promoted as soon as the party rejecting has knowledge of the cause on which it is based.

**4.** The disqualification shall not suspend the proceedings and shall be substantiated through the channels of an insolvency procedural plea.

The party whose rejection is proposed shall continue to act as insolvency practitioner, without the resolution handed down affecting the validity of the proceedings.

CHAPTER II

FUNCTIONS OF THE INSOLVENCY PRACTITIONERS[33]

**Article 33.** *Functions of the insolvency practitioners.*[34]

**1.** The functions of the insolvency practitioners, under the terms foreseen in this Act, are as follows:

a) Of a procedural nature:

---

[32] Renumbering by Article 7 of Act 17/2014, dated 30th September.
*Its previous numbering was Article 33.*
Addition of Paragraph two to Section 1 by Article 24 of Act 38/2011, dated 10th October.

[33] Addition by Article 8 of Act 17/2014, dated 30th September.
Addition of Paragraph two to Section 1 by Article 24 of Act 38/2011, dated 10th October.

[34] Amendment of Points 1 and 3 of Letter c) of Section 1 by Sole Article. One. 1 of Act 9/2015, dated 25th May.
Addition by Article 8 of Act 17/2014, dated 30th September.

1.To take action against the partner or partners personally responsible for debts prior to declaration of insolvency proceedings.

2.To take liability actions by the insolvent legal person against its directors, auditors or liquidators.

3.To apply, where appropriate, for seizure of assets and rights of the directors, liquidators, de facto or de jure, general proxies and those who have held that status within the two years prior to the date of declaring the insolvency proceedings, as well as the partner or partners personally responsible for the debts of the company prior to the declaration of insolvency proceedings under the terms foreseen in Article 48 ter.

4.To apply, if appropriate, to raise and cancel seizures imposed when their maintenance severely hinders continuity of the professional or corporate activity by the insolvent debtor, except for administrative seizures, with regard to which raising or cancellation cannot be decided, in any event, pursuant to Article 55.

5.To interrupt actions for eviction taken against the debtor prior to the declaration of the insolvency proceedings, as well as reinstating the currency of tenancy agreements up to the very moment of the effective eviction being performed.

6.Exercising actions to terminate and others to challenge.

7.To apply for enforcement of the ruling in the event of the Court having condemned the directors, proxies or partners to cover the deficit.

8.To apply for transformation of the abbreviated procedure to an ordinary one or an ordinary abbreviated procedure.

9.To substitute the debtor in the ongoing judicial procedures.

10.To exercise actions of a non- personal nature.

b) Inherent to the debtor or its governing bodies:

1.To perform, until judicial approval of the composition or opening the liquidation, the acts of disposal that are considered by the insolvency practitioner indispensable to secure the feasibility of the company or the treasury needs required by the continuity of the insolvency proceedings.

2.To attend the collegiate bodies of the insolvent legal person.

3.To perform the acts of disposal that are not necessary for continuity of the activity when offers are presented that materially coincide with the value they have been given on the inventory.

4.To apply to the Court of the insolvency proceedings to revoke the appointment of the accounts auditor and appointment of another to audit the annual accounts.

5.To undertake exercise of the voting rights to which the debtor is entitled in other companies, with prior judicial authorisation.

6.To claim disbursement of the corporate contributions that may have been deferred.

7.To reinstate the loan contracts and others of credit in favour of early maturity of which due to default on the repayment instalments or interest accrued, may have taken place within the three months preceding the declaration of insolvency proceedings, as long as the conditions of Article 68 are met.

8.Reinstatement of agreements to acquire moveable assets or real estate aggregate assets, with instalment consideration or price, the resolution whereof has taken place within the three months preceding the declaration of insolvency proceedings, pursuant to the terms set forth in Article 69.

9.To apply for authorisation for the barred director to remain in charge of the company.

10.Calling the meeting or assembly of shareholders to appoint those who are to cover the vacancies left by those barred.

11.To grant the debtor approval to file suits or appeals, to withdraw, compromise or desist when the matter of litigation may affect the assets thereof, except in the case of non- personal actions.

12.In mandatory insolvency proceedings, to substitute the rights of administration and disposal of the assets of the debtor pursuant to the terms set forth in Article 40.2 and, in particular:

ı) To adopt the necessary measures to continue the professional or business activity.

ıı) To draw up and submit the annual accounts to audit.

ııı) To apply to the Court for termination of contracts with reciprocal obligations pending fulfilment, if it is deemed convenient to the interest of the insolvency proceedings.

ɪᴠ) Presentation of tax returns and self-settlements.

13.In voluntary insolvency proceedings, to intervene the rights of administration and disposal of the assets of the debtor pursuant to the terms provided by Article 40.1 and in particular:

ɪ) To supervise drawing up of accounts.

ɪɪ) To determine the acts or operations inherent to transfers or trade that, due to being necessary for the continuity of the activity, are authorised in general terms.

ɪɪɪ) To authorise or confirm acts of administration or disposal of the governing body.

ɪᴠ) To grant the debtor the authorisation to desist, fully or partially withdraw and to compromise on lawsuits when the litigious matter may affect the assets thereof.

ᴠ) To authorise filing suits.

ᴠɪ) To present tax returns and self-settlements.

c) In labour matters:

1.To enforce judicial rulings handed down on the date of declaration opening the insolvency proceedings on material modification of collective labour conditions, on collective transfer, collective termination dismissal, and suspension of contracts and reduction of the working day.

2.To apply to the Court hearing the insolvency proceedings for material modification of labour conditions and collective termination or suspension of labour contracts in which the insolvent debtor is the employer.

3.To intervene in proceedings on material modification of collective labour conditions, on collective transfer, collective dismissal, and suspension of contracts and reduction of the working day stated during the insolvency proceedings and, where appropriate, to agree to these with the workers representatives.

4.To extinguish or suspend the contracts held by the insolvent debtor with top management personnel.

5.To petition the Court for compensations arising from top management contracts to be offset until the classification ruling is final.

d) Related to the rights of the creditors:

1.To amend the payment order of the credits against the aggregate assets when the insolvency practitioner considers it convenient under the terms foreseen in Article 84.3.

2.To prepare the list of creditors, to determine the inclusion or exclusion from the list of creditors credits declared in the proceedings, resolving inclusion of the new credits on the definitive list of creditors and reporting on inclusion of new credits on the final list of creditors prior to approval of the proposed composition.

3. To apply for opening of the liquidation phase in the event of cessation of the professional or business activity.

4.To notify holders of especially preferential credits opting to cover payment thereof against the aggregate assets and without disposing of the assets and rights affected.

5.To petition the Court for subsistence of the encumbrance in the case of sale of assets assigned a special preference.

6.To apply to the Court to make payments of ordinary credits in advance when payment of the credits against the aggregate assets and preferential credits are deemed to be sufficiently covered.

e) Report and evaluation functions:

1. To submit the report foreseen in Article 75 to the Court.

2. To perform the inventory of the aggregate assets with the content set forth in Article 82.

3. To propose appointment of independent experts to the Court.

4. Evaluation of the content of the early composition content.

5. Drawing up the definitive list of creditors and inventory as foreseen in Article 96.5.

6. Evaluating the content of the composition, in relation to the payment plan and, where appropriate, the feasibility plan accompanying it.

7. Reporting on the sale of the debtor's company as a whole.

8. Submitting quarterly reports to the Court hearing the insolvency proceedings on the state of the winding-up operations and a final report to justify the winding-up operations performed.

9. Submitting a reasoned, documented report to the Court on relevant facts for classification of the insolvency proceedings, with a proposal for a culpable or fortuitous finding regarding the insolvency proceedings.

10.Reporting before the Court resolves conclusion of the insolvency proceedings by payment of the total amounts of credits, or by renunciation by all the recognised creditors.

11. Updating the inventory and list of creditors drawn up in the proceedings in the event of reopening.

f) Functions to obtain value of assets and for winding-up.

1. Replacing the directors or liquidators when the winding-up phase is opened.

2.Submitting a winding-up plan to the Court to dispose of the assets and rights forming the aggregate assets of the insolvency proceedings.

3.To apply to the Court for direct sale of assets assigned to credits with special preference.

g) Secretariat functions:

1.Electronic communication of the declaration of insolvency proceedings to the State Tax Administration Agency and the General Treasury of the Social Security.

2. Notifying the creditors of the declaration of insolvency proceedings and the obligation to notify their credits.

3. Notifying the creditors of the provisional list of creditors foreseen in Article 95.

4. Receiving the notification of credits by the creditors.

5. Aiding the Court Clerk at the Creditors' Meeting, or chairing it when so resolved by the Court.

6. Attending the Creditors´ Meeting.

7. Notifying the known creditors who have their usual residence, domicile or seat abroad of the declaration of insolvency proceedings.

8. Requesting registry advertising abroad of the order of declaration and other procedural acts when this is convenient for the interest of the insolvency proceedings.

9. Demanding a translation into Spanish of the letters of notification of credits by foreign creditors.

10. Performing the telematic notifications foreseen by the Act.

h) Any others that this or other Laws attribute them.

**2.** The functions foreseen in this Article shall be exercised pursuant to the specific provisions of the different classes of insolvency proceedings and phases of the insolvency proceedings.

CHAPTER III

LEGAL STATUS OF THE INSOLVENCY
PRACTITIONERS[35]

**Article 34.** *Remuneration.*[36]

**1.** Insolvency practitioners shall be entitled to remuneration from the aggregate assets, except when they belong to the staff of the entities referred to in Article 27.6.

**2.** Remuneration of the insolvency practitioners shall be determined pursuant to a tariff that shall be approved by the enacting regulations that shall take into account the number of creditors, the accumulation of the insolvency proceedings and the scale of the insolvency proceedings according to the classification considered for the purpose of appointing the insolvency practitioners.

The tariff must necessarily fulfil the following rules:

a) Exclusivity. The insolvency practitioners may only receive the sums arising from application of the tariff for their intervention.

b) Limitation. The insolvency practitioners may not be remunerated above the maximum amount set in the implementing regulations for the overall insolvency proceedings.

---

[35]   Renumbering by Article 9 of Act 17/2014, dated 30th September.

[36]   Amended by Article 10 of Act 17/2014, dated 30th September.
*Please bear in mind that this amendment shall come into force on approval of the implementing regulations, as established in Transitional Provision 2 of said Act.*
Deletion of 2.b) and renumbering of Letters c) and d) as b) and c) by Article 2S of Act 38/2011, dated 10th October.
Amendment of Paragraph 2 by Article 7.2 of Royal Decree-Law 3/2009, dated 27th March.
Please refer to Additional Provision 2 and Transitional Provision 3 of Royal Decree-Law 3/2009, dated 27th March.

c) Effectiveness. In insolvency proceedings in which the aggregate assets is insufficient, payment of a minimum remuneration established in the implementing regulations shall be secured by means of a tariff security account that shall be covered by mandatory provisions by insolvency practitioners. These provisions shall be deducted from the remunerations effectively obtained by the insolvency practitioners in insolvency proceedings in which they act, using the percentage determined by the implementing regulations.

d) Efficiency. Remuneration of the insolvency practitioners shall be accrued as they complete their duties foreseen in Article 33. The remuneration initially set may be reduced by the Court for reasoned cause due to failure to fulfil the obligations of the insolvency practitioners or due to delay caused by the insolvency practitioners in fulfilment of their obligations, or due to deficient quality of their work.

In all cases, the quality of the work shall be considered deficient and that the remuneration shall be reduced, except if the Court, according to the objective circumstances or the diligent conduct of the practitioner, rules to the contrary, when the insolvency practitioners breach any obligation of information to the creditors, when they exceed any term that must be observed by more than fifty per cent, or when motions to challenge regarding the inventory or the list of creditors in favour of the claimants are carried in a proportion equal to or exceeding ten percent of the value of the assets of the aggregate assets, or the aggregate liabilities submitted by the insolvency practitioners in their report. In the latter case, the remuneration shall be reduced by at least the same proportion.

**3.** The Court shall set the amount of the remuneration following a hearing and pursuant to the tariff, as well as the terms within which it shall be paid.

**4.** At any stage of the proceedings, the Court may amend the remuneration set, on its own motion or at the request of the debtor or of any creditor, if any fair cause concurs, applying the tariff referred to in Paragraph 2 of this Article.

**5.** The order that sets or amends the remuneration of the insolvency practitioners shall be published on the Public Insolvency Register and may be appealed by the insolvency practitioner and by the persons legitimated to apply for declaration of insolvency proceedings.

**Article 35.** *Exercise of the office.*[37]

**1.** The insolvency practitioners and delegate assistants thereof shall perform their duties of office with the diligence of an orderly administrator and loyal representative.

**2.** When the insolvency practitioner is formed by two members, the duties of the insolvency body shall be exercised jointly. The decisions shall be adopted collegiately, except for exercise of the competences the Court may assign to them individually. In the event of disagreement, the Court shall decide.

**3.** The decisions and resolutions by the insolvency practitioners that are not of the ordinary course of business or administration shall be set down in writing and signed, as appropriate, by all their members.

**4.** The insolvency practitioners shall be subject to supervision by the insolvency Court. At any time, the Court may require all or any of the insolvency practitioners to provide specific information or a report on the current state of the insolvency proceedings.

**5.** Judicial resolutions handed down to resolve the matters referred to in this Article shall be issued as a court order, against which no appeal whatsoever may be lodged. Nor may an insolvency procedural plea be raised over the matter resolved.

**Article 36.** *Liability.*[38]

**1.** Insolvency practitioners and delegate assistants thereof shall be held liable to the debtor and to the creditors for damages and losses caused to the aggregate assets by acts and omissions that are unlawful or performed without due diligence.

**2.** The insolvency practitioners shall be held jointly and severally liable with the delegate assistants for the detrimental acts and omissions of the latter, except if they prove they acted with all due diligence to prevent or avoid the detriment.

---

[37]   Deletion of Paragraph 6 and amendment of Sections 2 to 4 by Article 26 of Act 38/2011, dated 10th October.

[38]   Deletion of Paragraph 2 and renumbering of the following by Article 27 of Act 38/2011, dated 10th October.

**3.** The liability action shall be substantiated by the relevant procedure of a declaratory trial, before the Court hearing or which has heard the insolvency proceedings.

**4.** The liability action shall expire after four years, from the claimant having knowledge of the damage or loss the claim concerns and, in all cases, from when the insolvency practitioners or delegate assistants have ceased to hold office.

**5.** If the ruling contains an order to compensate for losses and damages, the creditor who has exercised the action in the interest of the aggregate assets shall be entitled to reimbursement of the necessary expenses borne, against the sum received.

**6.** The foregoing is without prejudice to the relevant liability actions to which the debtor, creditors or third parties may be entitled for acts or omissions of the insolvency practitioners and delegate assistants that are directly detrimental to their interests.

**Article 37.** *Severance.*[39]

**1.** When a just cause concurs, the Court, on its own motion or at the request of any of the persons legitimated to petition for a declaration opening the insolvency proceedings, or any of the other insolvency practitioners, may sever the insolvency practitioners from office or revoke the appointment of the delegate assistants.

In all cases, severe breach of the duties as practitioner and ruling to challenge the inventory or list of creditors in favour of claimants for an amount equal to or above twenty per cent of the aggregate assets, or the list of creditors presented by the insolvency practitioners in their report, shall be a cause of severance of the practitioners, except if the Court rules to the contrary according to the circumstances.

**2.** Severance of the representative of a legal person shall imply the immediate severance as insolvency practitioner of the latter.

**3.** The judicial resolution of severance shall be issued as a court order, in which the reasons on which the Court bases its decision shall be stated.

---

[39] Amended by Article .11 of Act 17/2014, dated 30th September.
Amendment of Paragraph 4 by Article 17.9 of Act 13/2009, dated 3rd November.

Catálogo de Publicaciones

**4.** The public register foreseen in Article 198 shall be notified by the Court Clerk of the content of the order referred to in the preceding Paragraph.

**Article 38.** *New appointment.*[40]

**1.** In all cases of severance of an insolvency practitioner, the Court shall proceed without delay to make a new appointment.

**2.** If the person severed was the representative of a corporate director, the Court shall require notice of the identification of the new natural person who is to represent it to perform the duties of office.

**3.** The severance and new appointment shall be given the same publicity as the appointment of the practitioner substituted.

**4.** Should the insolvency practitioner be severed before conclusion of the insolvency proceedings, the Court shall order him to provide accounts of his activity. Such giving of accounts shall be submitted by the insolvency practitioner within the term of one month, from notification of the Court order, and it shall be subject to the same procedure, resolutions and effects foreseen in Article 181 for giving of accounts on conclusion of the insolvency proceedings.

**Article 39.** *Appeals.*[41]

A remedy of appeal may be filed against rulings on appointment, disqualification and severance of the insolvency practitioners and delegate assistants and, against the ruling resolving such, one of appeal to the Higher Court, which shall not have suspension effect.

Those legitimated to appeal are the debtor, the insolvency practitioners, the insolvency practitioners affected and those who prove legitimate interest, even though they may not have previously appeared.

---

[40]    Amendment of Paragraph 4 by Article 28 of Act 38/2011, dated 10th October.

[41]    Amended by Article 29 of Act 38/2011, dated 10th October.

## TITLE III

### ON THE EFFECTS OF DECLARING THE INSOLVENCY PROCEEDINGS OPEN

## CHAPTER I
## ON THE EFFECTS ON THE DEBTOR

**Article 40.** *Debtor's economic rights.*[42]

**1.** In the event of voluntary insolvency, the debtor shall conserve the rights of management and disposal of his aggregate assets, the exercise whereof shall be subject to intervention by the insolvency practitioners, via their authorisation or approval.

**2.** In the case of compulsory insolvency, exercise by the debtor of the rights of management and disposal of his assets shall be suspended, being substituted therein by the insolvency practitioners.

**3.** Notwithstanding what is set forth in the preceding Paragraphs, the Court may resolve suspension in the event of voluntary insolvency or mere intervention in the case of compulsory insolvency. In both cases, the resolution shall be justified, stating the risks it intends to avoid and the advantages sought.

**4.** On petition by the insolvency practitioners and having heard the insolvent debtor, the Court may resolve at any time by order to impose a change in the situations of intervention or suspension of rights of the debtor over his aggregate assets.

The change in the situations of intervention or suspension and subsequent amendment of the powers of the insolvency practitioner shall be subject to the publicity regime of Articles 23 and 24.

---

[42]   Amendment of the second Paragraph of Article 40.4 by Article 6.7 of Royal Decree-Law 3/2009, dated 27th March.

**5.** In the case of insolvency proceedings being open against an inheritance, the insolvency practitioners shall exercise the economic rights of management and disposal of the hereditament, without a change in that situation being possible.

**6.** Intervention and suspension are related to the rights of management and disposal of the assets, rights and obligations that are to be included in the insolvency proceedings and, when appropriate, those to which the debtor is entitled to with regard to the company or the marital property regime.

The debtor shall retain the right to make a last will and testament, notwithstanding the effects of the insolvency on the inheritance.

**7.** The acts by the debtor that breach the limitations established in this Article may only be annulled at the request of the insolvency practitioners and provided the latter have not been endorsed or confirmed them. Any creditor and those who were parties to the contractual relation affected by the infringement may require the insolvency practitioners to decide on the exercise of the relevant action or the endorsement or confirmation of the act. The annulment action shall be resolved through an insolvency procedural plea when appropriate, and shall expire, if the demand has been made, when one month has elapsed from its date. Otherwise, it shall expire on fulfilment of the composition with the debtor or, in the case of winding-up, on its conclusion.

The aforesaid acts may not be registered at a public register until they are confirmed or endorsed, or until expiry of the annulment action or its final rejection is accredited.

**Article 41.** *Effects on communications, residence and free movement of the debtor.*

The effects of declaring the insolvency proceedings open on the fundamental rights and liberties of the debtor in matters of correspondence, residence and free movement shall be those established in the Organic Act on Insolvency Reform.

**Article 42.** *Collaboration and information by the debtor.*

**1.** The debtor is bound to appear personally before the Mercantile Court and before the insolvency practitioners as often as required to do so and to collaborate and provide information on all matters necessary or convenient

for the interests of the insolvency proceedings. When the debtor is a legal person, these duties shall be the remit of its directors or liquidators and of those who have held these posts during the two years prior to the insolvency proceedings being declared open.

**2.** The duties referred to in the preceding Paragraph shall also affect the proxies of the debtor and those who were empowered as such within the period stated.

**Article 43.** *Conservation and management of the aggregate assets.*[43]

**1.** When performing the duties of management and disposal of the aggregate assets, their conservation shall be looked after in the most convenient way to the interests of the insolvency proceedings. To that end, the insolvency practitioners may petition the Court for the assistance they consider necessary.

**2.** Until judicial approval of the composition is secured or the winding-up is commenced, the properties, goods and rights forming the aggregate assets may not be disposed of or encumbered without approval by the Court.

**3.** What is set forth in the preceding Section does not include:

1. Acts of disposal that the insolvency practitioners consider indispensable to secure the feasibility of the business or the cash flow needs required for the continuity of the insolvency proceedings. The Court hearing the insolvency proceedings shall immediately be informed of the acts performed, attaching justification of the need thereof.

2. Acts of disposal of assets that are not necessary for continuity of the activity when offers are presented that materially coincide with the value they have been given on the inventory. That coincidence shall be construed to be material if, in the case of real estate, the difference is lower than ten per cent and in the case of moveable assets, twenty per cent, and if there is no record of a higher offer. The insolvency practitioners shall immediately inform the Court hearing the insolvency

---

[43]   The last Paragraph of Section 3 is suppressed and Section 4 is added by Sole Article. Two. 1 of Act 9/2015, dated 25th May.
A last Paragraph is added to Section 3 by Article 2.1 of Royal Decree-Law 11/2014, dated 5th September.
*Please refer, with regard to the transitory regime, Transitional Provision 1.2 of said Royal Decree-Law.*
Amendment of Sections 2 and 3 by Article 30 of Act 38/2011, dated 10th October.

proceedings of the offer received and the justification of the non-necessary nature of the assets. The offer presented shall be approved if a higher offer is not presented within the term of ten days.

3. Acts of disposal inherent to continuation of the professional or business activity by the debtor, under the terms established in the following Article.

4. In the case of conveyance of productive units of assets or services belonging to the insolvent debtor, the terms set forth in Article 146 bis and 149 shall apply.

**Article 44.** *Continuation of exercise of the professional or business activity.*[44]

**1.** A declaration opening the insolvency proceedings shall not interrupt continuation of the professional or business activity performed by the debtor.

**2.** In the event of intervention, and in order to facilitate continuation of the professional or business activity of the debtor, the insolvency practitioners may determine the acts or operations inherent to the business or trade of that activity that, according to their nature or amount, are deemed authorised in general terms.

Notwithstanding what is set forth in the preceding Paragraph, and notwithstanding the preservation measures that may have been adopted by the Court on declaring the insolvency proceedings open, until acceptance of office by the insolvency practitioners, the debtor may perform the acts inherent to the business or trade that are indispensable to continue his activity, as long as these are according to the normal market conditions.

**3.** In the event of suspension of the rights of management and disposal of the debtor, the insolvency practitioners shall adopt the necessary measures to continue the professional or business activities.

**4.** As an exception to the provisions contained in the preceding Paragraphs, the Court, at the request of the insolvency practitioners and after hearing of the debtor and the representatives of the employees at the company, may issue an order to close all or part of the offices, establishments or

---

[44]    Amendment of Paragraph 4 by Article 31 of Act 38/2011, dated 10th October.

operations held by the debtor, as well as, when he performs a business activity, the total or partial cessation or suspension thereof.

When these measures involve collective extinction, suspension or amendment of employment contracts, including collective transfers, the Court shall act pursuant to the provisions established in 8.2. and the proceedings of Article 64 shall simultaneously be initiated. In their petition, the insolvency practitioners shall fulfil the terms set forth in Article 64.4.

**Article 45.** *Debtor's books and documents.*

**1.** The debtor shall provide the insolvency practitioners the books it is mandatory to keep and any other books, documents and records on the economic aspects of his professional or business activity.

**2.** On request by the insolvency practitioners, the Court shall resolve the measures it may deem necessary for the effectiveness of the provisions of the preceding Paragraph.

**Article 46.** *Debtor's annual accounts.*[45]

**1.** In the case of intervention, the legal obligation shall subsist for the directors to draw up and submit their annual accounts to audit, under supervision by the insolvency practitioners.

The insolvency practitioners may authorise the directors of the insolvent debtor to comply with the legal obligation to draw up the relevant annual accounts for the previous financial year prior to the judicial declaration opening insolvency proceedings, delaying it to the month following presentation of the inventory and the list of creditors. Approval of the accounts shall be performed within the three months following expiry of that extension. This shall be reported to the Court hearing the insolvency proceedings and, if the legal person is bound to deposit the annual accounts, the Business Registry where registered. Once that notice has been served, the delay in depositing the accounts shall not give rise to closure of the registry sheet, provided the terms to deposit from expiry of that extended term to approve the accounts are complied with. Each one of the documents that form the annual accounts shall mention the legitimate cause of the delay.

---

[45]   Amended by Article .32 of Act 38/2011, dated 10th October.

**2.** On due request by the insolvency practitioners, the Court hearing the insolvency proceedings may resolve to revoke the appointment of the accounts auditor of the debtor legal person and appointment of another to audit the annual accounts.

**3.** In the case of suspension, the legal obligation shall subsist to draw up and submit the annual accounts for auditing, those powers being the remit of the insolvency practitioners.

**Article 47.** *Right to maintenance.[46]*

**1.** The insolvent natural person who is in a state of need shall be entitled to receive maintenance during processing the insolvency proceedings, against the aggregate assets, as long as there are sufficient assets to cover his needs and those of his spouse, registered civil partner when any of the circumstances foreseen in Article 25.3 concurs, and descendents under his care.

In the case of intervention, the amount and frequency thereof shall be those decided by the insolvency practitioners and, in the case of suspension, those authorised by the Court, having heard the insolvent debtor and the insolvency practitioners. In the latter case, the Court, hearing the insolvent debtor or the insolvency practitioners, and with prior petition by either of them, may amend the amount and frequency of the maintenance.

**2.** The persons regarding whom the insolvent debtor has the legal obligation to provide maintenance, except the spouse, registered civil partner when any of the circumstances foreseen in Article 25.3 concurs and descendents under his care, may only obtain them from the aggregate assets if they cannot obtain them from other persons legally bound to provide such and as long as they have brought action to claim such within the term of one year from the moment when they were due to receive such, with prior authorisation by the Court hearing the insolvency proceedings, that shall rule regarding their appropriateness and amount. The maintenance obligation imposed on the insolvent debtor by judicial ruling handed down prior to the declaration opening the insolvency proceedings shall be paid against the aggregate assets up to the amount set by the Court hearing the insolvency proceedings, this being considered an ordinary insolvency credit with regard to the excess.

---

[46]    Amended by Article 33 of Act 38/2011, dated 10th October.

**Article 48.** *Effects of the declaration opening insolvency proceedings on the bodies of debtor legal persons.*[47]

**1.** During the insolvency proceedings, the bodies of the debtor that is a legal person shall be maintained, notwithstanding the effects on their operation arising from the intervention or suspension of their rights of management or disposal.

**2.** The insolvency practitioners shall be entitled to attend and vote at the meetings of the collegiate bodies of the insolvent legal person. To these ends, they shall be summoned in the same way and the same advance notice as the members of the body that must meet.

Constitution of the meeting or assembly, or other collegiate body as a universal session, shall not be valid without the insolvency practitioners attending. The resolutions by the meeting or assembly that may have an asset based content or direct relevance to the insolvency proceedings shall require authorisation or confirmation by the insolvency practitioners to be effective.

**3.** The directors or liquidators of the legal person debtor shall continue to represent the company within the insolvency proceedings. In the event of suspension, the rights of administration and disposal inherent to the governing body or liquidators shall correspond to the insolvency practitioners. In the case of intervention, such powers shall continue to be exercised by the directors or liquidators under supervision by the insolvency practitioners, who shall have the remit of authorising or confirming acts of administration and disposal.

Empowerments that may exist at the time of declaring opening of insolvency proceedings shall be affected by suspension or intervention of asset related rights.

**4.** Should the office of director of the legal person be remunerated, the Court hearing the insolvency proceedings may resolve to put an end to such remuneration or to reduce it, considering the content and complexity of the management functions and the assets of the insolvent debtor.

**5.** At the request of the insolvency practitioners, the Court may assign him exercise of the political rights it may hold in other companies, as long as the asset interests of the legal person subject to insolvency proceedings are not affected.

---

[47]    Amended by Article 34 of Act 38/2011, dated 10th October.

**Article 48 bis.** *Effects of declaration of insolvency proceedings on actions against the shareholders.[48]*

**1.** During processing of the insolvency proceedings of the company, it shall be the exclusive remit of the insolvency practitioners to take action against the shareholder or shareholders personally liable for its debts prior to declaration of insolvency proceedings.

**2.** During processing of the insolvency proceedings of the company, it shall be the exclusive remit of the insolvency practitioners to claim, at the moment and up to the amount deemed convenient, the payment of the corporate contributions that have been deferred, whatever the term set in the deed or in the Articles of Association, and the accessory provisions pending fulfilment.

**Article 48 ter.** *Seizure of assets.[49]*

**1.** From the declaration of insolvency proceedings of the legal person, the Court, at its own motion, or on a reasoned request by the insolvency practitioners, may rule, as a preventive measure, seizure of assets and rights of its de facto and de jure directors and liquidators, of general proxies and of those who have had such status in the two years prior to the date of that declaration, when in view of the evidence gathered there are grounds to believe that there is a possibility that in the ruling classifying the insolvency the persons affected by the seizure shall be condemned to cover the deficit resulting from liquidation under the terms foreseen in this Act.

The seizure shall be decided according to the amount estimated by the Court and may be substituted, at the request of the party concerned, by a bank bond.

**2.** Likewise, during processing the insolvency proceedings of the company, the Court, on its own motion, or on the basis of a reasoned petition by the insolvency practitioners, may order the seizure of assets and rights of the shareholder or shareholders personally liable for the debts of the company prior to the declaration of insolvency proceedings, in the amount deemed sufficient, when the proceedings show there is a grounded possibility that the aggregate assets would be insufficient to cover all the debts, being empowered, at the request of the party concerned, to decide substitution of the seizure with a bank bond.

---

[48]    Addition by Article 35 of Act 38/2011, dated 10th October.

[49]    Addition by Article 36 of Act 38/2011, dated 10th October.

**3.** A remedy of appeal to the Higher Court may be filed against the order on the preventive measures.

**Article 48 quater.** *Effects of declaration of insolvency proceedings on actions against the directors of the debtor company.*[50]

Once insolvency proceedings have been declared, it shall be exclusively the remit of the insolvency practitioners to exercise liability actions of the insolvent legal persons against their directors, auditors or liquidators.

CHAPTER II

ON THE EFFECTS ON CREDITORS

**Section 1. On integration of creditors in the aggregate liabilities**

**Article 49.** *Integration of the aggregate liabilities.*[51]

**1.** Once the insolvency proceedings are declared open, all the creditors to the debtor, ordinary or otherwise, whatever their nationality and domicile, shall be integrated, de jure, in the aggregate liabilities of the insolvency proceedings, with no other exceptions than those established in the laws.

**2.** In the case of insolvency proceedings involving a person married under joint property regime, or any other of joint ownership, the aggregate liabilities shall include the credits against the spouse of the insolvent debtor, that are also credits for which the marital partnership or joint assets are liable.

**Section 2. On the effects on individual actions**

**Article 50.** *New declaratory trials.*[52]

**1.** The Courts of Law of the civil jurisdictional order and those of the labour order before which petitions are lodged that must be heard by the insolvency Court pursuant to the provisions established in this Act shall abstain from hearing them, warning the parties to avail themselves of their rights before the insolvency Court. If the petitions were admitted to

---

[50]    Addition by Article 36 of Act 38/2011, dated 10th October.

[51]    Amended by Article 38 of Act 38/2011, dated 10th October.

[52]    Addition of Sections 2 and 3 and the former 2 is renumbered as 4 by Article 39 of Act 38/2011, dated 10th October.

consideration the setting aside of all proceedings shall be ordered and the proceedings carried out shall be null and void.

**2.** The mercantile Courts shall not admit suits to consideration that are lodged after declaration of the insolvency proceedings and until their conclusion, in which action is brought to claim corporate obligations against the directors of insolvent capital companies who may have breached their duties in the event of a cause of dissolution arising. If admitted, what is set forth in the last Section of the preceding Paragraph shall apply.

**3.** The Courts of First Instance shall not admit suits to consideration that are presented after insolvency proceedings are declared open and until their conclusion, in which action is taken to recognise those who provide their work and materials for works, adjusted by lump sum, against the owner of the works under the terms set forth in Article 1,597 of the Civil Code. If admitted, the terms set forth in the last part of the first Paragraph of this Article shall apply.

**4.** The Courts of Law of the Contentious-Administrative, Labour or Criminal Jurisdictions before which actions are taken after declaration of the insolvency that may have a transcendence on the assets of the debtor, shall summon the insolvency practitioners and admit them as a party to defend the aggregate assets, if they appear.

**Article 51.** *Continuation and accumulation of declaratory trials pending.*[53]

**1.** The declaratory trials to which the debtor is a party, that are in process at the moment of the insolvency proceedings being declared open, shall continue to be substantiated before the same court as that hearing such until the ruling is final.

Notwithstanding this, these shall be accumulated in the insolvency proceedings on its own motion, as long as they are at first instance and the trial or hearing has not ended, for all trials to claim damages and losses, by the insolvent legal person against its de facto or de jure directors or liquidators and against the auditors.

The accumulated trials shall continue their processing before the Court hearing the insolvency proceedings, in the formalities of the proceedings

---

[53]   Amendment of Paragraph 1 by Article 40 of Act 38/2011, dated 10th October.
Amendment of Paragraph one of Section 2 by Article 17.10 of Act 13/2009, dated 3rd November.