# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | Chapter 15 |
| Abengoa, S.A., *et al.*, | Case No. 16-10754 (KJC) |
| | Jointly Administered |
| Debtors. | **RE:  D.I. No. 143** |

**OPPOSITION OF RLI INSURANCE COMPANY TO MOTION OF THE FOREIGN REPRESENTATIVE FOR AN ORDER UNDER 11
U.S.C. §§ 1507 AND 1521 RECOGNIZING AND ENFORCING THE ORDER OF THE SPANISH COURT HOMOLOGATING A RESTRUCTURING
AGREEMENT AND GRANTING RELATED RELIEF**

RLI Insurance Company ("RLI") opposes the Foreign Representative's motion for an order enforcing a Spanish Court homologation ruling and "related relief" (the "Motion").

## INTRODUCTION

The Motion is severely flawed for at least four reasons.

First, at the threshold, the motion was set on insufficient notice in violation of 11 U.S.C. § 1517(a) and Federal Rule of Bankruptcy Procedure 2002(q) requiring 21 days' notice but only 18 days' were given, and therefore must be denied.

Second, the motion is also premature and improper in asking this Court to afford permanent injunctive relief to enforce a Spanish Homologation Order that itself is plainly non-final and remains subject to substantial challenges (which will be filed in Spain by Monday, December 5, when they are due). Abengoa the Court repeatedly gives the misimpression that the existing Homologation Order reflects some final judicial evaluation and determination of the propriety of the homologation (or its predicate Master Restructuring Agreement). In fact, as Abengoa knows, the Court's interim acceptance of Abengoa's petition in Spain is based solely

1

on Abengoa's unilateral presentation, accepted as true, and it merely serves to <u>open</u> the challenge period. The challenges (which will be filed, as due, on or before December 5, 2016), now must be litigated, likely through trial of several fiercely contested issues of Spanish law, just as with the first wave of challenges that were raised to Abengoa's first homologation proceeding (re the standstill agreement). The first wave of challenges was filed in May and decided in October. A similar process on this second wave of challenges would result in final resolution in Spain approximately three to five months out.

<u>Third</u>, even if the MRA Homologation Order were final (it is not), the relief requested in the present motion is overbroad, purporting to extend the Spanish order far beyond its terms and to potentially apply it to claims, property and/or parties that are not even subject to the Homologation Order. If one day the Spanish Court does overrule the challenges and approve the Homologation of the MRA, in its current form or as amended, then any U.S. treatment of that Order can and should be no broader than the relief the Spanish court affords. To be perfectly clear: (1) parties who are not barred from pursuing Abengoa in Spain by virtue of the homologation proceedings should not be barred from doing so here; (2) particular claims against Abengoa that are not precluded or governed by the homologation proceedings should not be precluded here (even if a party also has certain claims that are within the Spanish proceedings); and (3) non-debtors in the United States, those companies Abengoa has selectively elected not to put before the Court, should not be the beneficiary of any order or injunction (even if pursuing them might arguably be inconvenient for Abengoa's contemplated deal).

For each of these reasons, the Motion must be denied. At a minimum, it should be postponed until after the Spanish proceedings has run its course, so there exists a final judgment with known terms to refer to—or not, as the case may be.

16114:10361171.DOCX.1

**FACTUAL BACKGROUND**

1. RLI has filed claims against Abengoa in the amount of $17,512,714.47 based on contractual and common law rights in connection with surety bonds issued by RLI on behalf of Abengoa affiliates.

2. In March 18, 2016, Abengoa, S.A. filed for judicial approval (*i.e.*, homologation) of a Standstill Agreement with certain creditors in the Spanish courts under the Spanish insolvency laws. Certain creditors including RLI filed formal challenges to the homologation of the Standstill Agreement. The challenges were not fully adjudicated until October 24, 2016, and the Spanish Court ruled in favor of the creditors who challenged the homologation of the Standstill Agreement in two key manners. Specifically, the Court held (1) that those creditors with vested, liquidated claims had standing to challenge the homologation and those creditors were subject to unfair treatment (and thus not bound by the homologation); and (2) that those creditors holding what Spanish law deemed to be contingent claims were not subject to homologation at all because they did not hold "financial liabilities"—those claims would be unimpaired by homologation. Sureties such as RLI presently hold, under Spanish law, both claims that are presumably subject to homologation (actual amounts paid and incurred to date to settle bond claims, and accrued legal fees and expenses); and claims that would not be subject to homologation under Spanish law because they are not "financial liabilities" in accordance with the October 24, 2016 judgment (those amounts reflecting indemnity for bond claims that have not yet been settled or defeated). Although Abengoa may argue the first homologation was "upheld," that is only as to parties that did not challenge it. Among the challengers, those with standing prevailed; and those who were found to lack standing (based on the facts as they existed at the time of the first homologation) were deemed to pass through unimpaired.

2. On March 28, 2016 and March 29, 2016 (the "Petition Date"), Abengoa, S.A., and certain of its related subsidiaries and affiliates (collectively, the "Foreign Debtors") had filed petitions for relief under Chapter 15 of the Bankruptcy Court in the United States Bankruptcy

Court for the District of Delaware, which are jointly administered under Case No. 16-10754 (Abengoa, S.A.) (Docket No. 18).

3. On April 27, 2016, this Court entered an order recognizing as a foreign main proceeding the application seeking judicial homologation of the Standstill Agreement (Docket No. 71). The Standstill Agreement expired by its own terms on October 28, 2016.

4. In October of 2016, a second homologation request was filed – this time by certain of the Foreign Debtors' friendly Creditors (those benefiting from the MRA). On November 8, 2016, the Spanish Court entered its initial order to homologate.

5. RLI and other surety companies intend to timely file a formal challenge to the November 8, 2016 homologation ruling, on or before its due date of December 5, 2016. The challenge will raise substantial questions to be decided under Spanish law.

6. On November 18, 2016, the Foreign Debtors filed their 45-page Motion for recognition on only 18-days' notice.

## ARGUMENT

### A. The Motion Is Untimely

Pursuant to section 1517, an order recognizing a foreign proceeding may only be entered after notice and a hearing. 11 U.S.C. § 1517(a). Pursuant to Bankruptcy Rule 2002(q), the notice period must be at least 21 days. The Motion was filed on November 18, 2016, and set for hearing on December 6, 2016. That is only 18 days' notice. The Rules should be enforced and the motion denied as procedurally improper.

### B. The Motion is Premature; The Spanish Order is not Final

The Motion is premature in asking this Court to enforce the Spanish Court homologation of the Master Restructuring Agreement ("MRA") as the Spanish Court approval process has not run its course, but rather, is subject to substantial challenges that will not be finally ruled upon for at least several months. The Motion incorrectly suggests that the homologation ruling verified *ex ante* that the MRA met the requirements under the Spanish insolvency law. Motion,

4

¶¶ 32, 46, 73, 74 and 77. This is incorrect because the ruling only has the force of law *ex post* after the challenges have been adjudicated, which has not yet taken place.

Moreover, because the continued existence of the MRA is conditioned on the confirmation of a Chapter 11 plan in jointly administered cases of *Abeinsa Holding, Inc., et al.* (Case No. 16-10790) that is consistent with the MRA. MRA, section 11.2.1(h). The Motion assumes that a plan, consistent with the terms of the MRA, will be confirmed on December 6, 2016. The plan that is set for hearing on December 6, 2016 violates the Bankruptcy Code as pointed out by RLI's objection in the Chapter 11 cases (Case No. 16-10790 – D.I. 929) as well as the many other objections filed by many other parties. Because the Motion is premature and not ripe, it must be denied.

### C. The Requested Relief is Overbroad

Even if the merits of the Motion are considered, it would be improper for this Court to grant this motion or to "enforce" the MRA because it is overbroad. Debtors seek entry of an order by this Court "permanently enjoining all parties from commencing or taking any action inconsistent with the Homologation Order within the territorial jurisdiction of the United States (the "Injunction")." (Page 2.) The motion and proposed order are rife with similarly overbroad language, suggesting Abengoa intends for this Order potentially to apply even more broadly than the scope of the Spanish Homologation Order it would enforce, extending to (1) "parties" to the U.S. proceedings that are not parties to the Spanish case; (2) claims not subject to the Homologation (even if held by parties that also hold claims that are potentially subject to homologation), and claims against non-Debtor U.S. Companies that are parties to or subject to the MRA but that Abengoa has chosen to hold out of these bankruptcy court cases.[1] Thus, even

---

[1] In the course of negotiations with certain other creditors, RLI is cognizant that the Debtors' Foreign Representative has been willing to modify some of the language of the proposed order to attempt to resolve some of the objections, including a proposal to limit to the injunction to the Foreign Debtors. The proposed revisions do not, however, cure the many fundamental problems with the Motion identified herein, but it should be noted that the Foreign Representative has been amenable to modifying some of the provisions challenged herein. No agreement has been reached.

5

if the notice and prematurity problems are resolved (for example this motion is renewed following conclusion of the MRA Homologation challenges litigation), the scope of relief of any Order recognizing the ruling should be no broader than the terms of the final judgment in Spain (if any).

In *Continental Airlines*, the Third Circuit stated that third-party releases were permissible only where they are "both necessary and given in exchange for fair consideration." *In re Continental Airlines*, 203 F.3d 203, 214-215 (3d Cir. 2000); *In re Spansion, Inc.*, 426 B.R. 114, 144 (Bankr. D. Del. 2010).  In order to allow non-consensual third-party release as, the Third Circuit requires that "specific factual findings" in support of the necessity and fair consideration for the releases. *Id.* at 214.

There is no evidence that these broad releases are essential to the reorganization or, more importantly, that adequate consideration is being provided for them.  If non-debtor third parties want the benefit of the bankruptcy process and the protection of the release with regard to itself and to its numerous, solvent subsidiaries, then all should contribute consideration to the reorganization from which they seek to benefit.

Moreover, the Foreign Debtors seek to release claims between non-debtor third parties over which this Court lacks constitutional jurisdiction. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982); *Granfinanciera v. Nordberg*, 492 U.S. 33 (1989); *Stern v. Marshall*, 131 S. Ct. 2594 (2011); *Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165 (2014).

### D. The Motion is Prohibitively Vague and Ambiguous

The Motion is unclear regarding the scope of parties would be affected by the requested injunction and contains a definition of "Affected Debt" that conflicts with the definition provided in the proposed order – a proposed order that contains other provisions that appear to be intentionally vague, ambiguous, and overbroad such as attempting to enjoin "any action" that would "interfere with . . . the administration, implementation, and consummation of the

Homologation Order or the Master Restructuring Agreement." Proposed Order, ¶ 6. These provisions are too unclear to understand what they mean. In addition, they could be unconstitutionally overbroad and should be narrowly tailored and clear as to what they mean. Any order on the Motion must make clear that it protects only property owned by the Foreign Debtors and does *not* bar actions against non-debtors and non-debtor property.

As drafted, the provisions could be interpreted as a stay or injunction against non-debtor third parties. Even if recognition is eventually granted and section 362 of the Bankruptcy Code takes effect as to the Foreign Debtors pursuant to section 1520(a)(1), section 362(a)(1) of the Bankruptcy Code applies only to actions or proceedings "against the debtor" -- not to actions or proceedings against non-debtors. It is well-established in the Third Circuit that the automatic stay does not apply to nondebtor "co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor." *Maritime Elect. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991); see also *McCartney v. Integra Nat'l Bank*, 106 F.3d 506, 509-10 (3d Cir. 1997). Some courts, however, have held that "unusual circumstances" may warrant extension of the stay to non-debtors. *See In re Continental Airlines*, 177 B.R. 475, 479 (D. Del. 1993). But the Foreign Debtors have made a showing of "unusual circumstances" or why a stay as to non-debtors would be constitutional.

Furthermore, extension of the stay to non-debtors would not be proper in a Chapter 15 case because Chapter 15 is supposed to merely support the insolvency law of the country where the foreign proceeding is located (the cases cited above are all Chapter 11 cases). In a chapter 15 case where similar relief was requested -- *i.e*., an extension of the stay to non-debtors -- such relief was denied. *See, e.g*., *Vitro, S.A.B. v. ACP Master, Ltd., et al. (In re Vitro, S.A.B.)*, 455 B.R. 571 (Bankr. N.D. Tex. 2011). In *Vitro*, the Court held that the foreign representative in a chapter 15 case was not entitled to injunction barring creditors from pursuing claims against subsidiary non-debtor guarantors and that the foreign representative of the debtor failed to satisfy its burden of showing that injunction was necessary to prevent irreparable harm given that any

7

benefit to the debtor would not be substantially outweighed by detriment to noteholders, who had bargained for guarantees of subsidiaries, and that the non-debtor guarantors could file their own petitions. *See id.* at 581-83. Thus, the requested relief is not appropriate in this chapter 15 case.

Non-debtors can avail themselves of the stay by commencing their own bankruptcy proceeding. Otherwise, they should not be entitled to the protections of bankruptcy solely because they are affiliates of or lenders to a Chapter 15 debtor. *See, e.g., In re Vitro*, 455 B.R. at 583.

Similarly, an injunction under section 105(a) of the Bankruptcy Code is not warranted. In order to obtain section 105(a) injunctive relief, the Foreign Debtors have the burden of demonstrating that the standard for a preliminary injunction has been met. In the Third Circuit, a debtor invoking section 105(a) to stay an action against non-debtors must satisfy the usual four-part test for a preliminary injunction. *See Wedgewood Inv. Fund v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.)*, 878 F.2d 693, 700-01 (3d Cir. 1989); *In re W.R. Grace*, 386 B.R. at 32 (applying four-part injunction test). The Foreign Debtors must establish: (i) a substantial likelihood of success on the merits (i.e., a successful reorganization); (ii) irreparable harm; (iii) that the harm to the debtor if a stay is not granted outweighs the harm the third party will suffer as a result of the stay; and (iv) injunctive relief would not violate the public interest. *See Wedgewood*, 878 F.2d at 700-01; *In re W.R. Grace*, 386 B.R. at 32 (citations omitted). 43. The Foreign Debtors have not even addressed these requirements, and certainly have made any showing on any of the requirements. Thus, Foreign Representative has failed to meet the burden for injunctive relief under section 105(a) of the Bankruptcy Code. Therefore, the Motion must be denied.

## **RESERVATION OF RIGHTS**

RLI hereby reserves all of its rights, including but not limited to, the right to supplement, revise, augment and or modify this opposition if it is later filed on proper notice, and preserves, reserves and retains any and all rights, duties, obligations and remedies found at law, equity or

otherwise to, *inter alia*, its rights to take discovery from any party or to seek clarification, modification, or other relief from the court regarding this matter.

## **CONCLUSION**

For each of the foregoing reasons, RLI respectfully requests that the Court deny the Motion.

December 2, 2016

                       SMITH, KATZENSTEIN & JENKINS LLP

                       */s/ Kathleen M. Miller*
                       Kathleen M. Miller (Id. No. 2898)
                       Brandywine Building
                       1000 West Street, Suite 1501
                       Wilmington, DE 19899-0410
                       Telephone: (302) 652-8400
                       Email: kmiller@skjlaw.com

                             - and –

                       Michael D. Prough, Esq.
                       MORISON & PROUGH, LLP
                       2540 Camino Diablo, Suite 100
                       Walnut Creek, CA 94597
                       Telephone: (925) 937-9990
                       Facsimile: (925) 937-3272
                       Email: mdp@morisonprough.com

                       *Attorneys for RLI Insurance Company*